614 So.2d 1331 (1993)
Debbie Mary JURGELSKY, Plaintiff-Appellee,
v.
Andre L. PINAC, III, Defendant-Appellant.
No. 92-339.
Court of Appeal of Louisiana, Third Circuit.
March 3, 1993.
*1332 Steven J. Dupuis, Lafayette, for Debbie M. Jurgelsky Pinac.
Lawrence B. Sandoz, III, Opelousas, for Andre L. Pinac.
Before GUIDRY, LABORDE and DECUIR, JJ.
GUIDRY, Judge.
This is an appeal of a district court judgment rendered on January 7, 1991, in a partition of community property dividing property which formerly made up the community of acquets and gains of Dr. Debbie Mary Jurgelsky and Dr. Andre L. Pinac III. Dr. Pinac appeals listing seven alleged errors. Dr. Jurgelsky answered the appeal assigning eight alleged errors.
*1333 Drs. Jurgelsky and Pinac were married on May 12, 1985, while both were OB-GYN residents. Dr. Pinac finished his residency first and began to practice in Opelousas. Upon completing her residency in July 1987, Dr. Jurgelsky entered practice with her husband as his partner. Their community of acquets and gains was terminated with court approval by a matrimonal agreement, pursuant to La.C.C. art. 2329, on March 18, 1988. This case is limited to issues dealing with the partition of the assets of the former community following its termination.

DR. PINAC'S SPECIFICATIONS OF ERROR
1) Dr. Pinac first questions the trial court's determination as to the net value of the office equipment owned by the parties and the allocation of the debt owed on the equipment. The trial judge's determinations were based upon an inspection and appraisal of all office equipment by Teri Fontenot, Vernon Schiff and Gwen Trussel; testimony and stipulations at trial; and, upon which party retained possession and enjoyed use of each piece of equipment or furniture following termination of the community. Leased equipment was excluded and the trial judge's final figure was the mathematical average between the value each party placed on the items in question. Our examination of the record reflects no clear error in the trial court's calculations.
2) The next error alleged by Dr. Pinac is the trial court ordering him to pay Dr. Jurgelsky one-half of the value of a community loan to Carol Stephens, Dr. Pinac's nurse and office manager. The loan was in the amount of $265.00. Appellant contends that the debt had been repaid as a result of "services rendered" by Stephens prior to the dissolution of the community. The trial judge found that Dr. Pinac failed to establish repayment of the loan. We find no clear error in this conclusion.
3) Dr. Pinac next complains of the trial court's disallowance of any reimbursement to him for payments made on the office telephone equipment following dissolution of the community. The record reflects that during the aforesaid period Dr. Pinac had exclusive possession and use of such equipment. The telephone equipment was awarded to Dr. Pinac in the partition proceeding.
In disallowing Dr. Pinac's claim, the trial court stated, in pertinent part, as follows:
. . . . .
5. I establish a cutoff date on the items allocated to the parties for the purposes of payments on mortgage, rentals or use fees and upkeep, maintenance, etc. I set this as date of dissolution or date of exclusive use, whichever occurred last.
. . . . .
17. Dr. Pinac's claim of $5088.83 for amount paid to Contel Credit Telephone is denied, except for those made between dissolution and cutoff date.
The telephone equipment in the office at Ventre Boulevard was community property. The payments for which Dr. Pinac seeks reimbursement were made in satisfaction of the debt owed on this equipment. These payments were in satisfaction of a community debt which ordinarily would entitle the payor from separate property to reimbursement. La.C.C. arts. 2358 and 2365. However, the trial court, in disallowing this claim, apparently concluded that Dr. Pinac's exclusive use of this community property during the period from community dissolution to partition on January 7, 1991, had a rental or use value equal to the payments made by him during such period.
We discern no clear error in the trial court's conclusion to disallow Dr. Pinac's claim for reimbursement. As our brethren of the First Circuit observed in Williams v. Williams, 509 So.2d 77 (La. App.1987), upon termination of the community the parties become co-owners with the right to possess or use the common property without the obligation to pay rent, "provided that such possession or use is not to the exclusion of his co-owner". Where the possession is to the exclusion of the co-owner, it necessarily follows that a fair rental value for the period of such exclusive use should be awarded. As we observed *1334 in Queenan v. Queenan, 492 So.2d 902 (La.App. 3rd Cir.1986), writ denied, 496 So.2d 1045 (La.1986), "... [T]he trial court is given broad discretion in settling and adjudicating upon the community regime. Thus, in the interest of equity and justice it would be within the discretion of the trial court to delineate any reasonable time or date for purposes of shearing off, or, for an effective date of a particular transaction, provided that the facts and circumstances of the particular case rendered such times or dates appropriate in order to effect a fair and equitable partition and division between the parties".
4) Dr. Pinac next complains that the trial court erred in classifying the lease subsidy agreement for the 121 Ventre Boulevard office space a community asset. The subsidy or "Agreement Regarding Retention of Physician Services" provided a $1,968.00 monthly subsidy of the rent of the community medical practice offices at 121 Ventre Boulevard for the period April 1988 thru March 1989.
Dr. Pinac argues that in order for continuation of the rent subsidy following termination of the community in March 1988, he had a correlative obligation to continue to occupy the premises and to continue active practice at Doctor's Hospital of Opelousas. In default of his doing so, the subsidy would be considered a loan and subject to repayment. Thus, he argues, the subsidy had no intrinsic value at the termination of the community in March 1988.
Dr. Jurgelsky counters Dr. Pinac's argument urging that the additional year (April 1988March 1989) of subsidy was allowed because she joined her former husband in medical practice. Thus, she argues, the second year of subsidized rent was an asset which she brought into the community. The deposition of Hospital Director Brian Riddle confirms that this was at least a part of the reason for the extension of the rent subsidy. Further, Dr. Jurgelsky argues that she was forced to leave the community offices at 121 Ventre Boulevard in March 1988 by Dr. Pinac while he continued to exclusively occupy the offices rent free, thus appropriating for his sole use and for the use of his separate estate, one year of rent subsidy, i.e., $23,616.00 in community assets.
The extension of the subsidy agreement was entered into during the existence of the community in July of 1987, when Dr. Jurgelsky joined the community medical practice. It was at that point that the nature of the agreement, as community property, was established. Had Dr. Pinac chosen to discontinue his practice at the Hospital and vacate the Ventre Boulevard offices, then the community would have incurred a debtthe penalty clause in the agreement which required a return of subsidized lease rentals.
Under the particular circumstances presented, we find no clear error in the trial court's classification of this one year subsidy as a community asset and the allocation of one-half of its value to Dr. Jurgelsky.
5) Next, appellant argues that the trial judge erred in ordering him to pay Dr. Jurgelsky one-half the sum she expended for an initial purchase of office medical supplies after termination of the community. The trial court recognized that the medical office supplies at the Ventre Boulevard offices were a community asset. It was established at trial that Dr. Pinac retained and used all of those supplies and that Dr. Jurgelsky purchased a similar quantity and quality of supplies as those retained by Dr. Pinac. Inasmuch as it was much easier and more accurate to value the supplies purchased by Dr. Jurgelsky rather than to rely on estimates of the value of the supplies retained by Dr. Pinac, we find no error in the trial judge's awarding Dr. Jurgelsky the sum of $723.50, representing one-half of the sum she expended for medical supplies to replace the supplies retained by Dr. Pinac.
6) We do find merit in Dr. Pinac's argument that the trial court erred when it ordered him to reimburse Dr. Jurgelsky for $1,552.61 for the 3M copy machine which was awarded to him. The record reveals that the copier was part of the office equipment on the "Teri Fontenot" list and therefore was included in the credit allowed Dr. *1335 Jurgelsky for office equipment. While the Teri Fontenot list values the copier at only $1,000.00, there is no indication that this figure ignores the feeder and stand, as argued by appellee. Further, if the trial judge wished to make a separate award for the copier, then there should have been some adjustment made to the Fontenot list. This was not done. Accordingly, we reverse this award.
7) Finally, Dr. Pinac complains that the trial judge erred in awarding Dr. Jurgelsky $9,940.00 for "additional" community medical equipment "apparently" owned by the community and retained by him. Dr. Pinac argues that the record does not support this award as there is no evidence of any "additional" medical equipment which was community owned. We agree.
Dr. Jurgelsky relies on Jurgelsky # 5, an equipment lease agreement, and the testimony of Jim Barrilleaux to justify the trial court's award. Both J-5 and Barrilleaux's testimony involve the lease by Dr. Jurgelsky of an ultrasound, an autoclave, a colposcope and cryo unit following termination of the community. No other medical equipment is either listed or mentioned in that lease.
The trial court's judgment correctly specifically excludes those pieces of equipment listed above as "additional" medical equipment. The parties stipulated that the ultrasound in Dr. Pinac's office was leased equipment. The other items, autoclave, colposcope and cryo unit, appear on the Fontenot list and were allotted to Pinac with proper credit allowed to Dr. Jurgelsky. Inasmuch as we find no other equipment listed in the record outside of the Fontenot list, which disposition was discussed previously, we find error in this award and amend the judgment to disallow same.

DR. JURGELSKY'S ANSWER TO APPEAL
1) Initially, Dr. Jurgelsky complains of the trial court allocating the outstanding accounts receivable from the former community medical practice equally between the two doctors. Appellee urges that since the remaining accounts receivable were due for work performed by Dr. Pinac, with the exception of one account, that such accounts, subject to the one exception, should have been allotted to Dr. Pinac with proper credit allowed Dr. Jurgelsky.
We find no error in the trial court's allocation of the accounts receivable. The record reflects that, prior to dissolution of the community, all income generated by either physician in the medical partnership went into a joint account which was administered equally by both doctors. The trial court's allocation assures that the parties will share equally in the collection of these remaining accounts as well as in any loss sustained as a result of any account which proves uncollectible.
2) Dr. Jurgelsky, as did Dr. Pinac in his error number one, questions the allocation of the office equipment and its debt. For the same reasons discussed in Dr. Pinac's assignment, we decline to disturb the trial court's determination on this issue.
3) Dr. Jurgelsky next complains of the trial judge's denial of her claim against Dr. Pinac for the loss of the State of Louisiana Department of Health and Human Resources receivables through prescription. The trial court held that Dr. Jurgelsky had failed to prove this claim by a preponderance of the evidence. We find no clear error in this factual finding.
4, 5 and 6) In her next assignments of error, Dr. Jurgelsky argues that the trial court erred in denying her claim for reimbursement of one-half of the mortgage payments, insurance and taxes she made on the family home between the termination of the community and the date of partition.
In denying this claim, the trial court reasoned, in pertinent part, as follows:
. . . . .
5) I establish a cutoff date on the items allocated to the parties for the purposes of payments on mortgages, rentals, or use fees and upkeep, maintenance, etc. I set this as date of dissolution or date of exclusive use, whichever occurred last.

*1336 6) All insurance and upkeep on the properties after cutoff are disallowed.
. . . . .
9) Rentals of the Choctaw Drive residence are disallowed since they fall after cutoff date.
10) Dr. Jurgelsky's claim for home maintenance is disallowed as subsequent to cutoff date.
. . . . .
19) Dr. Pinac's claim for rental of Choctaw Drive residence is denied as cutoff is date of first exclusive use, after which Dr. Jurgelsky could not claim note payments on the residence.
. . . . .
21) Property taxes on Choctaw Drive residence are denied as occurring after cutoff date.
The family residence was allotted to Dr. Jurgelsky in the partition. She had exclusive use of the residence from the date the community was dissolved to the date of partition. The trial court apparently concluded that her exclusive use of this property had a value equal to the mortgage payments, insurance and taxes paid during such period. The record contains no evidence which would indicate otherwise. Dr. Jurgelsky's claim in this regard is similar to Dr. Pinac's claim for reimbursement of mortgage payments made on the Contel Telephone equipment and for the reasons previously given in connection with the latter claim, we find no clear error in the trial court's conclusion that Dr. Jurgelsky is not entitled to reimbursement. Additionally, we observe that under La.R.S. 9:374 C a spouse who uses and occupies the family residence pending either the termination of the marriage or the partition of the community property is liable for rental for such use and occupancy if ordered by the court.
7) Dr. Jurgelsky claims that the trial court erred in denying her claims for reimbursement for various repairs she made to the family home between termination and partition of the community. During the period in question, Dr. Jurgelsky had exclusive use of the family home. The items Dr. Jurgelsky claims, plumbing, air conditioning, lawn mower and T.V. repairs, are not in the nature of improvements to the family home but rather are items of maintenance occasioned by her use of the dwelling. Additionally, we note that the items claimed came after the district court's established cut off date for such items. Accordingly, we find no error in the trial court's denial of Dr. Jurgelsky's claims for these items.
8) Finally, Dr. Jurgelsky argues that the trial judge erred in denying her claim for reimbursement for the cost of leasing medical equipment similar to the community medical equipment retained by Dr. Pinac at the Ventre Boulevard office for his sole use. During the trial, it was established that Dr. Jurgelsky paid $583.20 per month to lease a fetal ultrasound, an autoclave, a colposcope and a cryo surgery unit. There was also a stipulation that the fetal ultrasound retained by Dr. Pinac was itself leased, placing Dr. Pinac in the same position as Dr. Jurgelsky as to this piece of equipment. Further, we note that the fetal ultrasound's value was more than twice that of all the other equipment leased by Dr. Jurgelsky combined. There is no evidence in the record to establish what a fair rental (lease) value of the medical equipment, less the ultrasound, would be. Accordingly, we find no clear error by the trial court in denying this item.
For the reasons stated above, we amend the trial court judgment as follows: (1) the $1,552.61 Dr. Pinac was ordered to pay in reference to the 3M copy machine is reversed and disallowed; (2) the $9,940.00 Dr. Pinac was ordered to pay to Dr. Jurgelsky in connection with "additional community medical equipment" is reversed and disallowed. In all other respects the judgment of the trial court is affirmed. Costs of this appeal are assessed equally between Drs. Jurgelsky and Pinac.
AFFIRMED AS AMENDED.