# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 12-1051

DIONE W. DAVID

VERSUS

RICHARD G. DAVID

**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 113919
HONORABLE CHARLES LEE PORTER, DISTRICT JUDGE

**********

## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Billy Howard Ezell, and James T. Genovese, Judges.

**AFFIRMED AS AMENDED.**

**Ed W. Bankston**
**P. O. Box 53485**
**Lafayette, LA 70505**
**Telephone:  (337) 237-4223**
**COUNSEL FOR:**
     **Defendant/Appellant - Richard G. David**

**L. E. "Tony" Morrow, Jr.**
**The Law Offices of Tony Morrow**
**323 East University Avenue**
**Lafayette, LA 70503**
**Telephone:  (337) 233-9515**
**COUNSEL FOR:**
     **Plaintiff/Appellee - Dione W. David**

**THIBODEAUX, Chief Judge.**

The defendant, Richard G. David, appeals the trial court's judgment of partition of community property. He asserts that his former spouse, the plaintiff, Dione W. David, was allocated more in assets and reimbursements than the amounts authorized by law. For the reasons that follow, we affirm as amended the judgment of the trial court. We do not consider Dione's request for attorney fees based on her assertion of a frivolous appeal as no Answer was filed to Richard's appeal.

## I.

## ISSUES

We must decide:

(1)    whether the trial court manifestly erred in partitioning the community assets and liabilities under La.R.S. 9:2801;

(2)    whether the trial court manifestly erred in awarding reimbursements claimed by the parties.

## II.

## FACTS AND PROCEDURAL HISTORY

Richard and Dione David, domiciliaries of New Iberia, Louisiana, were married for thirty-six years. At the time of their divorce, there were five businesses and nine pieces of real estate at issue for partition. Richard and Dione stipulated to appraised values of six of the nine real properties, the values on eight vehicles and other movables, Richard's reimbursement of mortgage, tax, and insurance payments on some community properties, and Dione's reimbursement of attorney fees. The parties also stipulated that four of the businesses, David

Mortuary, Inc., David Marble and Granite, Inc., Beau Pre Memorial Park Cemetery, and Limousines, LTD, were the separate property of Richard David.

The community's business, Dede's Wholesale Florist, Inc. (Dede's), was run primarily by Dione throughout the marriage, and she was given occupancy and use of the store location at 1203 Trotter Street in New Iberia. This asset is next door to the David Funeral Home and became the greatest source and subject of discord, restraining orders, and alleged abuses between the parties. Dede's also had a closed-down, non-operating store at 110 Glaser Drive in Lafayette, which was considered rental property.

The community's other New Iberia assets include rental houses at 6605 Old Spanish Trail (sometimes referred to as "OST" or "Highway 182" property), 407 Dahlia Street, 407 Wayne Street, 4208 Northside Road, and 508 Prioux Street. The community's family home was located at 506 Prioux Street. Richard was given the use and occupancy of the family home as his residence. The parties stipulated, by consent judgment, to Richard's waiver of expense reimbursement claims and to Dione's waiver of rental reimbursement claims on this property. The couple also owned a two-story camp at 111 Cove Row, Cypremont Point, Louisiana. Richard was also given use and occupancy of the camp.

On the above-described community property, Richard asserted 331 claims for reimbursement of expenses totaling $305,572.00. Before trial, the court engaged the services of a hearing officer, Paul Landry, to meet with the couple and their attorneys to address occupancy issues and the reimbursement claims of the parties. The hearing officer conferences (HOC) on reimbursement claims were held over four days, immediately preceding trial, during which Richard's 331

2

claims and documentation were individually discussed, then grouped and categorized on spreadsheets, providing easier access during trial, and providing the HOC evaluations and recommendations on each claim.

After a lengthy trial, the trial court issued a four-page judgment of partition of community property. Richard appeals the trial court's allocation of community assets and liabilities, the appraisals of the camp, its contents, and contents at other locations, the amount of certain "mortgage" debt, and the trial court's awards of reimbursements to both parties.

III.

**STANDARD OF REVIEW**

An appellate court may not set aside a trial court's findings of fact in absence of manifest error unless it is clearly wrong. *Stobart v. State, Through DOTD*, 617 So.2d 880 (La.1993); *Rosell v. ESCO*, 549 So.2d 840 (La.1989).

IV.

**LAW AND DISCUSSION**

Richard contends that the trial court erred in partitioning the community property under La.R.S. 9:2801 which requires "that each spouse receive[] property of an equal net value." La.R.S. 9:2801(A)(4)(b). He asserts that the trial court allocated seventy-eight percent of the community's net assets to Dione, in the amount of $891,084.94, while allocating only twenty-two percent of the assets, in the amount of $249,123.40, to himself. We disagree with Richard's analysis, though we have found some mathematical errors and omissions in the

3

judgment.  Accordingly, we affirm as amended the trial court's judgment of partition.

*Preliminary Matters*

As a threshold matter, we find no merit in Richard's attempts to revise the mathematical schedules in the trial court's thirty-page written reasons for judgment.  This is a voluminous case, and there are various mathematical errors in the trial court's working tables that do not appear in the final judgment.  The appellate court reviews the judgment, not reasons for the judgment.  *Johnson v. Henderson*, 04-1723 (La.App. 4 Cir. 3/16/05), 899 So.2d 626.  In general, if the appellate court believes that the trial court reached the proper result, it will affirm the judgment.  *Id.*  Here, Richard corrects and revises only certain figures in the trial court's reasons and omits others.  We amend the judgment, not the reasons.

We further note that, pursuant to La.Code Civ.P. art. 2128, Richard has designated "such portions of the record which he desires to constitute the record on appeal."  Accordingly, we must render a judgment which is just, legal, and proper, based upon the record on appeal, but we cannot receive new evidence.  La.Code Civ.P. art. 2164.  Richard has attached numerous exhibits to his appellate brief, but the attached exhibits are not part of the record on appeal.  *C&B Sales & Serv., Inc. v. Slaughter*, 04-551 (La.App. 3 Cir. 10/20/04), 885 So.2d 683.

This is also true of memoranda and exhibits that appear in the record just because they were filed in the trial court record; however, *if* they were not also introduced into *evidence*, we cannot consider them as part of the record on appeal.  *See State ex rel. Guste v. Thompson,* 532 So.2d 524 (La.App. 1 Cir. 1988); *Leyva v. Laga,* 549 So.2d 914 (La.App. 3 Cir. 1989).

Here, the designated record contains documents that were filed into the record after the last day of trial on August 10, 2011. The record is not to remain open after trial except for very limited filings specifically identified and allowed by the trial court. *See Dugas v. Bayou Teche Water Works*, 10-1211 (La.App. 3 Cir. 4/6/11), 61 So.3d 826. The trial court exhibited great patience in receiving and re-hashing evidence, particularly on Richard's reimbursement claims, even after engaging a hearing officer. The court did not leave the record open after August 10, 2011. We limit our review to documents filed into evidence before the end of trial.

Further, we will not consider the $82,498.68 in additional reimbursements that Richard asserts on appeal, claiming that he spent these amounts on the properties *after* trial. We further note that the vast majority of these claims are on property allocated to him, including the family home at 506 Prioux, which was occupied by him, and the property upon which he waived his reimbursement claims.

Finally, it is the appellant's burden to designate support in the record for the assertions and assignments of error raised in his appellate brief. Pursuant to Uniform Rules—Courts of Appeal, Rule 2-12.4 (emphasis added), the appellant's argument "shall include a suitable reference *by volume and page* to the place in the record which contains the basis for the alleged error." Most of the references in Richard's brief point to the page number in the trial court's written reasons rather than to a page number in this 1,633-page record that actually contains the *evidence* upon which we rely. The non-sequential insertion of the documents purporting to support Richard's 331 claims for reimbursement and his failure to provide the location of his proof have made for an unnecessarily difficult review.

5

# ASSETS AND LIABILITIES ALLOCATED TO DIONE

The trial court's judgment allotted to Dione four rent houses and the camp, the contents of the camp, one car, and Dione's own IRA, for a total of $957,947.50 in *gross* assets. The trial court also allotted to Dione all of the debt associated with these assets, in the total amount of $299,393.10. The *net* assets to Dione as reflected in the judgment of partition equal $658,554.40.[1] The *net* assets allocated to Richard, later discussed in detail, equal only $437,691.48. The equalizing payments calculated by the trial court do not equalize the distribution of net assets. Therefore, we will amend the judgment based upon our findings on the items appealed.

## *Rental House – Northside Road – Description of Asset*

Richard asserts that the rental house on Northside Road was shown as real estate, but that the asset was in reality the proceeds of the sale of the unimproved real estate. This is correct; but he neither disputes the allocation to Dione, nor its value. Hence, the distinction is of no moment, and the error is of no merit.

---

[1]The camp is located at 111 Cove Row, Cypremont Point, Louisiana. The judgment valued the assets to Dione as follows; we have placed an asterisk next to the assets that Richard disputes.

| ImmovableAssets | Im-Value | MovableAssets | M-Value | Debt | Net To Dione |
|---|---|---|---|---|---|
| 111 Cove Row* | 400,000.00* | Contents | 13,697.50* | | 413,697.50* |
| NorthsideRd/sold | 70,750.00 | | | | 70,750.00 |
| 508 Prioux* | 150,000.00 | | | 89,055.54 | 60,944.46 |
| 407 Dahlia | 166,000.00 | | | 142,676.23 | 23,323.77 |
| 407 Wayne | 109,500.00 | | | 54,661.33 | 54,838.67 |
| | | Kia Sorrento | 13,000.00 | 13,000.00 | -0- |
| | | Dione's IRA | 35,000.00* | | 35,000.00 |
| *Her Totals* | 896,250.00 | | 61,697.50 | 299,393.10 | 658,554.40 |

### *Rental House – 508 Prioux Street - Allocation of Asset*

Richard contends that the rental property at 508 Prioux Street should have been allocated to him, as was the family home at 506 Prioux Street. He does not dispute that these properties are community property, but he states that they were given by his family, along with part of the Trotter Street property, which was allocated to him also. Richard asserts that this asset, 508 Prioux, is next door to his residence at 506 Prioux, and it is across the street from one of his businesses, David Mortuary, Inc. (sometimes referred to as David Funeral Home). In allocating community assets, under La.R.S. 9:2801(A)(4)(c): "The court shall consider the nature and source of the asset or liability, the economic condition of each spouse, and any other circumstances that the court deems relevant."

Here, the parties stipulated to the appraised value of 508 Prioux as $150,000.00. On the last day of trial, Richard submitted memoranda and exhibits indicating that two loans at Iberia Bank, bearing account numbers 4431 and 8043, with balances of $78,817.70 and $10,238.32, respectively, constituted the debt on 508 Prioux Street. The trial court used Richard's submissions in allocating this total debt of $89,056.02 to Dione when it allocated 508 Prioux to her. Dione filed her pleadings as a pauper in this case. Given the nature and source of the asset, its location, the indebtedness on it, and the economic conditions and resources of the parties, we agree that this asset and its attendant debt should be allocated to Richard. This amendment to the judgment decreases Dione's net assets, and increases Richard's net assets, by $60,944.46.

*Camp and Contents – 111 Cove Row - Appraisal and Allocation of Assets*

Richard asserts that the trial court disregarded William Elliott's $300,000.00 appraisal and erroneously placed a value of $400,000.00 on the camp. As to the camp's contents, he argues that the trial court should have used David Fremin's $4,330.00 appraisal instead of the $13,697.50 appraisal used in the judgment. There is no mortgage on the camp. Consequently, Richard asserts a net value on the camp and its contents of $304,330.00, instead of the $413,697.50 reflected in the judgment. He further argues that the camp should have been allocated to him (at this lower value), rather than to Dione. While the trial court generally has great discretion in determining which appraisal to use in a case such as this, we agree that the appraisal of the camp in this instance appears to be somewhat arbitrary.

The camp on Cove Row was one of the three properties upon whose value the parties could not agree. The other two properties were: the Dede's store location at 1203 Trotter Street in New Iberia, and the rental house at Old Spanish Trail. Robert Beyt, initially the court-appointed appraiser, used four comparables in the Cove Row area and appraised the camp at $435,000.00; he appraised Trotter Street at $285,000.00, and he appraised Old Spanish Trail at $125,000.00. William Elliott, who also qualified as an expert appraiser, used five comparables around the camp and appraised it at $300,000.00; he appraised Trotter Street at $224,000.00, and he appraised Old Spanish Trail at $85,900.00. The trial court's judgment used William Elliott's appraisal of $224,000.00 for the Trotter Street property and used Robert Beyt's appraisal of $125,000.00 for Old Spanish Trail. For the camp, however, the trial court did not use Beyt's appraisal or Elliott's appraisal.

Rather, the trial court assigned its own value to the camp, substituting its opinion for that of both expert appraisers, and the court's methodology is not apparent. A trial court may not substitute its opinion for that of experts who testified at trial, i.e., completely disregard such testimony, when the testimony is well grounded and based upon good reasoning. *See State, Dep't of Transp. and Dev. v. Van Willet,* 386 So.2d 1023 (La.App. 3 Cir.), *writs denied*, 392 So.2d 692 (La.1980); *State, Dep't of Transp. & Dev. v. Tynes*, 433 So.2d 809 (La.App. 1 Cir.), *writ denied*, 437 So.2d 1153 (La.1983); *see also Domino v. Domino*, 99 So.2d 328, 233 La. 1014 (La.1957). Where Elliott's appraisal contained more comparables, we find merit in Richard's argument and amend the judgment to reflect a value of $300,000.00 for the camp at 111 Cove Row.

As to the contents of the camp, the trial court's valuation of $13,697.50 was based upon movables including furniture and indoor and outdoor equipment on a ground deck, an upper deck, in three bedrooms, a living room, a kitchen, an upstairs area, and a utility room. The court's methodology is clear in the spreadsheet attached and incorporated by reference to its judgment. On all home furniture and furnishings at each house, the trial court considered the value assigned to each item, by each of four people: Dione, Richard, appraiser David Fremin, and appraiser J.C. Chargois.[2] The court then set its own value for each item, which is well within the court's discretion. *See Jurgelsky v. Pinac*, 614 So.2d 1331 (La.App. 3 Cir. 1993).

As to the allocation of the camp to Dione, Richard asserts that the trial court erred in failing to consider the nature and source of the asset. He argues that

---

[2]The court's appraisal of $13,697.50 and Mr. Chargois' appraisal of $19,520.00 seem much more in line with the movables described at the camp than Mr. Fremin's appraisal of $4,330.00.

he should have received the camp because it was in his family before he and Dione purchased it. He and Dione rebuilt it after it was destroyed by a hurricane, to retire there. Dione, who filed her pleadings as a pauper in this case, was living with her mother at the time of trial. She testified that she still did not have a house; that she would like to have the camp as it was a livable home and a viable option for her because it was already set up as a house; and it was close to her mother. The camp is not encumbered by a mortgage. We will not disturb the trial court's allocation of the camp to Dione, as it clearly conforms to La.R.S. 9:2801(A)(4)(c).

### Dione's IRA

The trial court's judgment awarded Dione $35,000.00 as the value of her own IRA invested with New York Life, and it awarded Richard $65,000.00 as the value of his own IRA, also invested with New York Life. Richard asserts that these were not the actual values of the IRAs and that the trial court inequitably awarded Dione one half of his IRA, but did not award him one half of Dione's IRA. The trial court's earlier schedules indicate that it considered both IRAs as community assets to be divided. The sworn descriptive lists of both parties indicate that the actual amounts were $33,779.90 and $64,996.59, for the IRAs of Dione and Richard respectively.

As to the trial court's distribution of each IRA to its original owner, even where one account is larger than the other, this kind of division does not of itself constitute manifest error or abuse of discretion. While under La.R.S. 9:2801(A)(4)(b) and (d), the court is required to provide each spouse with an equal *net* distribution, under La.R.S. 9:2801(A)(4)(c), the court "may divide a particular asset or liability equally or unequally or may allocate it in its entirety to one of the

10

spouses." For example, each allocation of the nine real-property assets had a different value. As indicated, it is the *net* distribution of *all* assets and liabilities that must be equal.

Here however, Richard further asserts that one half of the value of his IRA had already been distributed to Dione, which is not reflected in the judgment, and that no reciprocal distribution was made to him for one half of Dione's IRA. The record reveals that the trial court issued an order in May of 2011 requiring Richard to provide immediate access to Dione of one half of the value of his IRA. On June 24, 2011, the trial judge signed a Qualified Domestic Relations Order (QDRO) spelling out the New York Life account numbers involved and the obligations of the payor and payee. Richard asserts that he wrote to New York Life on August 5, 2011, instructing them to transfer $49,850.81, purportedly one half of the value of his IRA at the time, from his account to Dione's account. He attaches exhibits that we cannot consider; the letter, though discussed at trial, does not appear to have been entered into evidence; and the document showing transfers to Dione's account actually post-dates the trial.

The last witness to testify at the end of trial, however, was New York Life representative Jon Delahoussay. He confirmed the amount of $49,850.81 and the fact that he and his legal department and his subsidiary, who actually authorizes the disbursement of funds, had been working on the issue for three months, but no transfer or check had yet been issued. The trial court then granted Dione's request that New York Life be ordered to transmit the funds within ten days or suffer a $5,000.00 penalty. Based upon the record before us, we amend the judgment to reflect that both parties are to receive one half of Dione's IRA, at $16,889.95 each, and one half of Richard's IRA, at $49,850.81 each. Based upon

11

the foregoing amendments—the re-allocation of 508 Prioux, the changes in the values of the camp and the IRA assets, the net assets allocated to Dione decrease from $658,554.40 to $529,350.70.

## ASSETS AND LIABILITIES ALLOCATED TO RICHARD

The court allocated to Richard the family home at 506 Prioux, the rental property and its contents at 6605 Old Spanish Trial, all of the Dede's assets, which include the operating store at 1203 Trotter Street in New Iberia, a non-operating store at 110 Glaser Drive in Lafayette, and four vehicles used by Dede's for its deliveries and business needs. The court further allocated to Richard two sports cars, an SUV, two boat-motor-trailer rigs, a utility trailer, a burial crypt, and the value of his own IRA at $65,000.00. The trial court also assigned to Richard the debt associated with the foregoing assets.[3]

---

[3]We have placed an asterisk next to the assets that Richard disputes.

| ImmovableAssets | Im-Value | MovableAssets | M-Value | Debt | Net To Richard |
|---|---|---|---|---|---|
| 506 Prioux/Fmly | 245,000.00 | Contents | 19,605.00* | 161,667.02 | 102,937.98 |
| Dede's/Trotter | 224,000.00 | | | 200,000.00* | 24,000.00 |
| Dede's/Glaser | 116,500.00 | | | | 116,500.00 |
| | | Suburban | 3,139.00 | | 3,139.00 |
| | | Pick-up | 1,975.00 | | 1,975.00 |
| | | Van | 408.00 | | 408.00 |
| | | Van | 1,014.00 | | 1,014.00 |
| Old Sp. Trail | 125,000.00 | Contents | 9,200.00 | 50,000.00* | 84,200.00 |
| | | Camero | 46,000.00 | 46,000.00 | -0- |
| | | Corvette | 12,500.00 | | 12,500.00 |
| | | Yukon | 24,000.00 | 24,000.00 | -0- |
| | | GW Boat Rig | 10,975.00 | | 10,975.00 |
| | | Scout Bt. Rig | 5,020.00 | | 5,020.00 |
| | | Utility Trailer | 500.00 | | 500.00 |
| Burial Crypt | 9,522.50 | | | | 9,522.50 |
| | | Richard's IRA | 65,000.00* | | 65,000.00 |
| *His Totals* | 720,022.50 | | 199,336.00 | 481,667.02 | 437,691.48 |

### Family Home – 506 Prioux Street

Richard correctly asserts that the trial court's judgment lists an asset to him twice; i.e., the family home at 506 Prioux Street in New Iberia. This was clearly a word processing error in the final judgment, as the paragraph and language are identical and appear to have been "pasted" in twice. The value of the family home was stipulated to by the parties as $245,000.00. It was allocated to Richard, and the allocation, the appraisal, and the indebtedness on the house, of $161,667.02, are not in dispute.

Richard asserts that David Fremin's appraisal of $11,320.00 on the contents should have been used, instead of the $19,605.00 assigned by the trial court. The movables at this address included four or five king bedroom suites, furnishings in two family rooms, foyer, kitchen, patio, storage, and utility rooms, and it included athletic equipment. The appraisal expert, J.C. Chargois, evaluated the contents at $25,233.00. We have explained the trial court's methodology on evaluating the furniture and fixtures above. The court's evaluation is reasonable. We will not disturb the judgment on this issue.

### Richard's IRA

As previously indicated, the judgment awarded Richard $65,000.00 as the value of his own IRA. For the reasons stated above, we amend the judgment to reflect that each party receives one half the value of Dione's IRA, at $16,889.95 each, and one half the value of Richard's IRA at $49,850.81 each.[4]

---

[4]If Richard's transfer of $49,850.81 was completed as he asserts, then Dione should make a reciprocal transfer of $16,889.95, *or,* the final equalizing payment to her can be reduced by $16,889.95. If Richard's transfer did not go through, he can reduce the $49,850.81 transfer to Dione by $16,889.95, in which case, she makes no transfer, and the equalizing payment is not altered.

***Debt of Dede's Wholesale Florist, Inc.***

The trial court's judgment allocated to Richard both pieces of real estate owned by Dede's, the operating store at 1203 Trotter Street in New Iberia, valued at $224,000.00, and the non-operating store at 110 Glaser Drive in Lafayette, valued at $110,000.00. It also awarded to Richard the four company vehicles, with a total value of $6,536.00. These Dede's assets, therefore, have a value of $340,536.00, and these values are not being appealed. Richard does, however, appeal the $200,000.00 of business debt associated with Dede's and allocated to him along with the assets.

The trial court's judgment indicated Dede's business debt of $200,000.00, including debt at Regions Bank, but the court provided no breakdown of the debt, and we are unable to locate any bank records showing loans or business debts of Dede's for this amount, or any amount. Notwithstanding, Richard asserts that the company was defunct because of Dione's mismanagement, and that he was unfairly left with $200,000.00[5] of business debt which should be used to reduce Dione's assets. This assertion is unsupported.

Jason McMorran of Postlethwaite and Netterville (P&N) testified at trial regarding his analysis of the business. His conclusion was that the best value obtainable is to sell the assets, pay off the debts, and divide the proceeds. He reported that the Dede's florist business did suffer a decline from 2004 to 2010. He opined, however, that the decline was likely due to the lack of referrals from

---

[5] The trial court's judgment shows the business debt associated with Dede's as $200,000.00, but shows it twice, once under each piece of real estate allotted to Richard (it mentions only Regions Bank as associated with this debt). Richard argues the amount of $200,000.00, but he shows it twice, as $400,000.00, in the math which he says represents the 78/22 split of the community.

David Funeral Home and to the fact that Dione began taking a reasonable salary while running the business.

Richard's own behavior affected the business negatively as well. The record reveals that Richard's funeral business was next door to Dede's, that he parked across the street and watched the comings and goings at Dede's, that he harassed Dione, intimidated and threatened her employees, entered the premises and removed paperwork, and that he was loud and vulgar in front of the customers. Emily LeBlanc, a florist and manager who worked for Dione, testified at trial that Richard came to Dede's on a Sunday while Ms. LeBlanc was working and cursed at her so violently (spitting words such as fat f'ing whore and bitch) that she had to leave, even though she still had another $600.00 worth of deliveries to make. Ms. LeBlanc testified that she was interested in acquiring Dede's at one time, but Richard's response, "over his dead body", and his harassment finally provoked her into quitting.

Richard's assertions about the debts of Dede's are duplicative and unreliable. Our review of the record indicates that all but one of the loan balances asserted by Richard as being debts of Dede's, unfairly allocated to him, have in fact been allocated to Dione as debt on the houses allocated to her in the judgment of partition, based upon Richard's own memoranda and exhibits.

More specifically, Richard asserts that Dione depleted lines of credit and created business debt including the withdrawal of $14,736.76 from Iberia Bank account #5237. Elsewhere, he asserts this as Dede's debt of $25,000.00. Yet, based upon exhibits entered by Richard on the last day of trial, account #5237 was an asset line with a balance of $24,877.22 associated with the rental house at 407

Dahlia Street, not with business debt owed by Dede's. Moreover, the trial court's judgment allocated this debt to Dione, not Richard (see below).

Overall, Richard submitted bank records for eight account numbers, only one of which he associated with debt of Dede's, as follows:

| Bank | Loan Number | Balance | Property Assoc. |
|------|-------------|---------|-----------------|
| Regions Bank | #4312 | $ 66,971.00 | 506 Prioux asset line |
| | #2606 | 94,696.02 | 506 Prioux house loan |
| Debt per Judgment | On 506 Prioux | $ 161,667.02 | Allotted to Richard |
| | | | |
| Iberia Bank | #4431 | $ 78,817.70 | 508 Prioux house loan |
| | #8043 | 10,238.32 | 508 Prioux asset line |
| Debt per Judgment | On 508 Prioux | $ 89,056.02 | Allotted to Dione |
| | | | |
| Iberia Bank | #2326 | $117,799.01 | 407 Dahlia house loan |
| | #5237 | 24,877.22 | 407 Dahlia asset line |
| Debt per Judgment | On 407 Dahlia | $142,676.23 | Allotted to Dione |
| | | | |
| Iberia Bank | #4458 | $ 54,661.33 | 407 Wayne house loan |
| Debt per Judgment | On 407 Wayne | $ 54,661.33 | Allotted to Dione |
| | | | |
| MidSouth Bank | #1806 | $ 22,488.43 | Sig.Loan/Dede's debt |

As indicated in the above and previous tables, the trial court's judgment mirrored the amounts of those bank balances and allotted each debt to the house Richard assigned to it. Three of those properties (508 Prioux, Wayne, and Dahlia), with attendant debt in five loans, originally went to Dione, and one of the properties (506 Prioux), with attendant debt in two loans, originally went to Richard. On the same day he submitted the above information, he testified that Dione took money from asset lines on three rent houses and used it for Dede's. Those loans, as indicated in the table above, come to almost $90,000.00, but they were assessed to Dione, not to Richard.

While examining this table, it is important to note that Richard further testified in August that he took money from the home equity line, loan #4312 above, attributed as debt on 506 Prioux, for several purchases and improvements to

the property at Old Spanish Trail, to be discussed below. However, Richard had previously testified in June that this account was used for Dede's.[6]

On the last day of trial, Richard submitted only one account number, MidSouth Bank #1806, with a balance of $22,488.43, that he associated with Dede's business debt. Throughout his appellate brief, he asserts the balance of this loan differently. He asserts withdrawals from Dione in 2009 and 2010 that total $15,519.00. He asserts a MidSouth judgment against him in the amount of $22,541.73, which we cannot consider because the supporting information is in the form of an exhibit/judgment not entered into evidence, *and* it is dated six months after the judgment we are reviewing. See *Leyva*, 549 So.2d 914, and *Dugas*, 61 So.3d 826, as discussed in "preliminary matters."

Richard asserts a judgment by Louisiana Wholesale Florist, Inc. against Dede's in the amount of $29,901.59. This also is in the form of an exhibit that we cannot consider. It is a judgment not entered into evidence; it *postdates* the judgment under review by nine months; and in any event, it *dismisses* Richard from the suit with full prejudice. Dione's detailed descriptive list does show a debt to Louisiana Wholesale Florist, Inc. in the amount of $30,000.00, which was updated to $33,000.00 in her amended list. The record indicates that Dede's owns eighty-eight shares of Louisiana Wholesale Florist, Inc. and that those shares are being held as security against the debt. Whether this is a collectible debt is questionable, but this appears to be a debt of the business to be satisfied out of the sale of the assets, and we will include it as a Dede's liability allocated to Richard.

---

[6]We have also discovered that Regions #4312 is the same account as #8571, apparently a credit card tied to the account, as the record contains probably twenty-five receipts for payments submitted by Richard, most of which are interest payments. Close examination reveals that both account numbers have the same credit line of $191,000.00, identical interest payments, and the same balance of $67,096.57 in 2009 and 2010, and that they are one-in-the-same account.

Dione's original detailed descriptive list further shows a Dede's debt of $62,488.00 which she later amended to $76,738.23. The source of this debt remains a mystery, but Dione does list it separately from the bank loans previously discussed. Accordingly, we will include it.

The trial court spent days trying to sort out which debt was associated with Dede's and the other properties during trial. The June trial transcripts indicate that the court was still looking for the entity that held the accounts receivable on Dede's and that the court wanted those liabilities provided by July 15. We cannot locate a single loan bearing the name of Dede's, and Richard points to no bank records supporting debt made by Dede's, other than those previously discussed.

Richard asserted in his memorandum on the last day of trial that Dede's debt load was $62,488.00, and subsequently on the same page he asserted that it was in excess of $100,000.00.

We find that the record does not support debt against Dede's in the amount of $200,000.00, and we amend that portion of the judgment. The most supportable figure is $132,226.66. This is the sum of the MidSouth Bank loan (#1806) with the balance of $22,488.43, as documented by the parties with some consistency, plus the $33,000.00 debt to Louisiana Florist, Inc. and the Dede's debt of $76,738.23 indicated in Dione's amended descriptive list. We, therefore, amend the judgment to show that the mortgage and business debt allocated to Richard in connection with Dede's is $132,226.66.

### *Mortgage on Rental Property – Old Spanish Trail*

Richard asserts that the mortgage debt on 6605 Old Spanish Trail is $72,000.00, not the $50,000.00 reflected in the trial court's judgment. He points to

18

no bank records in support of this figure. As previously indicated, there was significant commingling of the lines of credit used to purchase and maintain the nine properties at various banks, such that the term "mortgage" was loosely used and unsupported by the bank records. The trial transcripts demonstrate the trial court's difficulty in discerning the true nature of a liability. We have done our best, but we cannot find any account numbers or bank receipts showing a mortgage on Old Spanish Trail. As indicated, Richard admitted to using the home equity line on 506 Prioux for purchases and improvements to Old Spanish Trail. That equity line in Regions account #4312 is already allocated to Richard as debt on the family home at 506 Prioux.

Accordingly, we amend the judgment to delete the $50,000.00 debt on the Old Spanish Trail property.[7]

Based upon the foregoing amendments—the allocation of 508 Prioux to Richard, the correction on the amount of the IRA assets, and the corrections on the amount of debt associated with Dede's and Old Spanish Trail—the net assets to Richard increase from $437,691.48 to $618,150.04.

Accordingly, where Richard's net assets are now $618,150.04, and Dione's net assets are now $529,350.70, the difference is $88,799.34. Thus, Richard will owe an equalizing payment to Dione for one half of the difference,

---

[7]We note that the trial court did not award reimbursement to Richard for the mortgage payments he asserted on Old Spanish Trail. The mortgage payment claims on the spread sheet amounted to over $23,000.00, but we could not find the receipts to back up the claims. The spreadsheet and the trial transcripts indicated that these claims were going to be granted. We can only surmise that the trial court had approved the *category* of the claim but ultimately discovered no documentation to support "mortgage" payments on this property, and that the debt on Old Spanish Trail appears in reality to be the equity asset line already attributed as debt on 506 Prioux. Richard did not raise the issue of the missing mortgage reimbursements in his brief.

which is $44,399.67. We will now consider the reimbursements awarded and will adjust the equalizing payment accordingly.

## REIMBURSEMENTS

When a spouse uses separate funds to pay a community obligation, that spouse is entitled upon termination of the community to reimbursement for one half of the amount paid. La.Civ.Code art. 2365. The burden of proof is on the party claiming reimbursement. *Charles v. Charles*, 05-129 (La.App. 1 Cir. 2/10/06), 923 So.2d 786. A trial court's findings as to whether reimbursement claims have been sufficiently established are reviewable under the manifest error standard. *Kline v. Kline*, 98-1206 (La.App. 3 Cir. 2/10/99), 741 So.2d 670.

### Reimbursements to Dione

The trial court awarded reimbursements to Dione in the amount of $109,828.54. This amount included $97,875.00 for one half of the rental revenues on six properties for the twenty-seven months between the divorce petition and the commencement of trial. Those properties included four rent houses, a non-operating store used as a rent house, and the camp, all owned by the community.[8] The remainder of Dione's $109,828.50 reimbursement award is for attorney fees, stipulated to and not under appeal.

Richard contends that Dione should not have been reimbursed the $97,875.00 representing one half of the rental income because there was no court order and no agreement between the parties on the rent. He cites *McCarroll v.*

---

[8]The monthly rental values established by appraiser, Robert Beyt, and used by the court for the four rent houses were: $1,000.00 for 508 Prioux Street; $750.00 for 407 Wayne Street; $1,200.00 for 407 Dahlia Street; and $1,750.00 for 6605 Old Spanish Trail. The rental value of the old Dede's store location at 110 Glaser Drive was set at $750.00 per month. The rental value of the camp at 111 Cove Row was set at $1,800.00 per month.

*McCarroll*, 96-2700 (La. 10/21/97), 701 So.2d 1280, and *Moore v. Moore*, 05-290 (La.App. 3 Cir. 11/2/05), 917 So.2d 1126, *writ denied*, 05-2472 (La. 3/24/06), 925 So.2d 1228. *McCarroll* addressed the value of the wife's use and occupancy of the family home and held that "rental payments may not be retroactively assessed under La.R.S. 9:374(C) unless otherwise agreed by the spouses or ordered by the court." *McCarroll*, 701 So.2d at 1289. *Moore* followed, finding the wife not liable for rental on the family home pursuant to La.R.S. 9:374(C) and *McCarroll*.

Currently under La.R.S. 9:374(C) (emphasis added):

> A spouse who, in accordance with the provisions of subsection A or B of this Section, *uses and occupies* or is awarded by the court *use and occupancy* of the family residence, a community immovable **occupied as a residence** . . . *shall not be liable to the other spouse for rental* for the *use and occupancy*, except as hereafter provided. If the court awards use and occupancy to a spouse, it shall at that time determine whether to award rental for the use and occupancy and, if so, the amount of the rent. The parties may agree to defer the rental issue for decision in the partition proceedings. If the parties agreed at the time of the award of use and occupancy to defer the rental issue, the court may make an award of rental retroactive to the date of the award of use and occupancy.

Here, Richard was awarded use and occupancy of the family home at 506 Prioux Street pursuant to HOC recommendations on April 9, 2009. Part of the document was read into the record at trial on June 28, 2011, and asked to be made an order of the court by Richard's attorney at the time. The court thereafter referred to the document as a judgment. It contained a waiver by Richard of "any and all reimbursement claims associated with the payment of any financial obligations secured or associated with the former marital residence." It also contained a waiver by Dione of her reimbursement claims "associated with the fair

21

rental value" of this property. Thus, Dione is not seeking rent from Richard for his use of the family home at 506 Prioux Street.

The rental properties at 508 Prioux, 407 Wayne, 407 Dahlia, 110 Glaser, and 6605 Old Spanish Trail, for which Dione is receiving rental reimbursement, are income producing properties completely under Richard's control. These properties were either rented out, and he collected the rents, or they were available to be rented. Therefore, La.R.S. 9:374(C) is not at issue on any of these properties.

The trial court found that Richard had exclusive possession and control of all community immovable properties, except for 1203 Trotter Street, the operating Dede's store location that Dione ran as a business. The court further found that Richard set and received all rents, refused to involve Dione, and that he used "absurd measures" to deny Dione access to the other properties. "The concurrence of both spouses is required for the alienation, encumbrance, or lease of community immovable . . . ." La.Civ.Code art. 2347. In its written reasons, the court explained that Dione sought to use either the Glaser Drive property or the camp, and that Richard refused to supply her water at Glaser Drive, though he had supplied it to a renter there,[9] and he declined to let her use the camp.

Under La.Civ.Code art. 2338, community property encompasses the natural and civil fruits of community property. "Civil fruits are revenues derived from a thing by operation of law or by reason of a juridical act, such as rentals . . . ." La.Civ.Code art. 551. "Co-owners share the fruits and products of the thing held in indivision in proportion to their co-ownership." La.Civ.Code art. 798. "In the absence of other provisions of law or juridical act, the shares of all co-owners

---

[9]The renter, Jeff Ragan, testified at trial regarding the water supply.

22

are presumed to be equal." La.Civ.Code art. 797. "A co-owner may freely lease . . . his share of the thing held in indivision[,]" but the "consent of all the co-owners is required." La.Civ.Code art. 805. "The use and management of a thing held in indivision is determined by agreement of all the co-owners." La.Civ.Code art. 801. "[A] co-owner is entitled to use the thing held in indivision according to its destination, but he cannot prevent another co-owner from making such use of it." La.Civ.Code art. 802.

The trial court characterized the rental reimbursements in the judgment as rental revenues on community properties in the exclusive control and possession of Richard from March 20, 2009 to June 27, 2011. At trial, when the court granted Dione the rental reimbursements on these properties, Richard's attorney did not object. As to these income producing properties, we find no manifest error in the trial court's award of rental revenues.

The judgment also awarded Dione rental reimbursement on the camp at 111 Cove Row for the same twenty-seven-month period as the other rental properties. Richard asserts that he was awarded use and occupancy of the camp pursuant to the HOC recommendation in April of 2009; he apparently occupied the camp as a residence, along with the family home at 506 Prioux Street. Thus, we revisit La.R.S. 9:374(C) in connection with the camp as a community immovable occupied as a residence by one of the parties. Richard asserts that Dione is not entitled to rental reimbursement on the camp because it was awarded to him by the hearing officer, not by court order, not by agreement of the parties, and no specific rental value was awarded at the time. He does not quote the document or point to any place in the record where we might read this portion of the document. However, the record reveals that the HOC awards were made an order of the court.

23

Additionally, the record reveals the following colloquy at trial on June 28, 2011, between the court and the attorneys for the parties as they presented evidence and tried the parties' reimbursement claims. Dione's attorney is Mr. Morrow, and Richard's attorney is Mr. Bankston. After the judge granted Dione's reimbursement claim on the attorney fees, pursuant to the consent judgment, her attorney moved to the rental reimbursement claims:

MR. MORROW:

Judge, our second item is – deals with the 111 camp. There was –

THE COURT:

111 Cove?

MR. MORROW:

I'm sorry. 111 Cove. In the original HOC there was a provision that specifically states that plaintiff, Miss David, is reserving her full rental reimbursement on that property. Mr. David was provided exclusive use and occupancy of that camp.

The expert testimony that has been received in the record yesterday by the court-appointed expert, valued the rental camp at $1,800 per month, and this matter has been now 27 months out. Simple math 27 x $1,800 is $48,600.00.

THE COURT:

All right. Do you have any objection?

MR. MORROW:

The testimony of the expert has already been received.

MR. BANKSTON:

Yes. No objection, Your honor.

THE COURT:

All right. Then we'll grant the reimbursement.

Under La.R.S. 9:374(C), when the court awards use and occupancy to a spouse, the parties may agree to defer the rental issue for decision in the partition proceedings, and the court can then award rental retroactive to the date of the award of use and occupancy. Our review of the record indicates that this is what occurred when Dione reserved her rental reimbursement on the camp at 111 Cove Row. Richard asserts the date as April 9, 2009. We, therefore, affirm the trial court's award of reimbursements to Dione in the total amount of $109,828.54.

### *Reimbursements to Richard*

Richard asserted 331 claims for reimbursement on the community properties at issue, in the total amount of $305,572.00. The trial court engaged the services of the hearing officer, Paul Landry, and the parties and their attorneys met with him for four days to review the individual claims and the supporting documentation. The hearing officer provided line item spread sheets to the court, listing each reimbursement claim, its amount, the property it addressed, the category of the claim, such as "lawn care," "mortgage," "taxes," and so forth, the reason for the other party's objection to the claim, and the hearing officer's recommendation. The trial court then spent days of trial time adjudicating the claims, taking some under advisement for additional research or asking for more documentation where needed.

The trial judge asked for briefs from the parties on the issue of exclusive use and expressed his intention to likely follow the recommendation of the hearing officer unless the parties could provide an exception or documentation supporting a contrary finding. Each of the claims fell under one of the hearing officer's descriptors of either "probably valid," indicating that it appeared legally

sound, provided it was supported by admissible evidence; or "possibly valid," indicating slightly less confidence in the validity of the claim; or "questionable," indicating a legal or factual weakness of the claim; or "not valid," indicating that it arose prior to judicial demand or had been previously waived.

The judgment of the trial court awarded Richard $49,859.75 in total reimbursements. He was reimbursed $27,210.21 for one half of his mortgage payments on 506 Prioux Street, 508 Prioux Street, 407 Dahlia Street, 407 Wayne Street, and on an "unsecured" loan at MidSouth Bank. He was also reimbursed $22,649.54 for his payment of insurance premiums and taxes, though no breakdown of the properties was provided by the court.

In Richard's appellate brief, he essentially asserts one general complaint, i.e., that he fulfilled his fiduciary duty to maintain these properties and that *all* of his 331 claims are valid under La.Civ.Code art. 2369.3. For support, he then points the court to the record at pages "1327-1517," basically a 200-page spread filled with non-sequential receipts, whose handwritten numbers often do not match the HOC numbers on the spread sheets. In failing to list an individual reimbursement claim that was denied but that was supported by a specific document on a specific page in the record, the appellant has failed to comply with Uniform Rules—Courts of Appeal, Rule 2-12.4.

Our review of the record reveals that Richard used a receipt book to create and draft invoices for his work on various community properties decades before the filing of Dione's divorce petition on March 20, 2009, sometimes going back into the 1980's. We found at least seven such receipts totaling $185,218.00. In addition to being self-serving, these claims do not reflect uncompensated labor used to enhance the *separate* property of the other spouse, as anticipated by

26

La.Civ.Code art. 2368. Nor do they reflect Richard's use of separate funds to improve community property under La.Civ.Code art. 2367. These claims were correctly denied, as were other claims for services and materials he paid for with community funds on community property prior to the termination of the community. The hearing officer's report contained the following observation:

> The Hearing Officer attempted to explain to [Richard] that uncompensated labor performed by either party during the community which inures to the benefit of the community or increases the value of the community is not a reimbursable expense. The explanation was to no avail, and Defendant insisted on presenting the claims. Although the hearing officer cannot say for sur[e] what Defendant's motivation was for submitting so many clearly inappropriate reimbursement claims, it tends to appear that he is trying to cumulate large dollar value claims to offset or completely eradicate Plaintiff's share of the community.

Additionally, Richard repeatedly submitted ineligible claims for funds expended on 506 Prioux Street, the family home he occupied and upon which he specifically waived his reimbursement claims. His claims were submitted despite the fact that he was properly awarded reimbursement for one half of his mortgage payments on this property. *See Moore*, 917 So.2d 1126.

Numerous other claims were denied where Richard used crews from his other businesses to change locks, mow grass, and fix curtain rods at properties that were generating rental income, which he collected and kept. In determining the validity of Richard's claims, the trial court applied La.Civ.Code art. 806, which provides as follows:

> A co-owner who on account of the thing held in indivision has incurred necessary expenses, expenses for ordinary maintenance and repairs, or necessary management expenses paid to a third person, is entitled to reimbursement from the other co-owners in proportion to their shares.

27

If the co-owner who incurred the expenses had the enjoyment of the thing held in indivision, his reimbursement shall be reduced in proportion to the value of the enjoyment.

The trial court found that Richard had exercised his exclusive use, possession, and control of all of the co-owned properties except the Dede's store location at 1203 Trotter Street. The court stated,

As to immovable properties under lease or rental, Mr. David alone, set rent and lease[] amounts, and was paid all rental payments, in exercise of his control over the properties. Mr. David refused to advise, discuss or involve Ms. David in any way and accepted all rental payments and used them as he saw fit. Therefore, any and all claims for reimbursement by Defendant should be subject to an off-set, in accordance with *Louisiana Civil Code Article 806.*

The record indicates that four of the properties were under lease (Dahlia, Wayne, Glaser and 508 Prioux); Richard was awarded use and occupancy of two properties, 506 Prioux and 111 Cove Row (the camp); he stored equipment and a motor home (apparently used as an office) at 6605 Old Spanish Trail but could have rented it. That leaves only the Northside property that was sold early on, and 1203 Trotter where Dione ran Dede's. In its written reasons for judgment, the trial court explained:

In asserting a claim for reimbursement, the burden is on the claiming party, to prove that the expense was (1) necessary and that it (2) enhanced the value of the property. *Tarver v. Tarver*, [05-367 (La.App. 3 Cir. 11/2/05), 916 So.2d 1222]. An expense is deemed necessary if it is for the preservation of the thing. [La.Civ.Code] art. 527. And the test for [enhanced] value, is that the enhancement must be such that a strong and substantial economic advantage inured to the community. *Jones v. Jones,* 605 So.2d 689 (La.App. 2 Cir.1992) [, *writ denied,* 607 So.2d 571 (La.1992)].

However, before the claiming party can meet the burden of reimbursement, the party must establish that

28

the debt was actually paid. *Hatsfelt v. Hatsfelt*, 922 So.2d 732 (La.App. 3 Cir. 2/1/06). The Third Circuit, in *Hatsfelt*, [] relied on Louisiana Civil Code Article 1846, which requires proof "by at least one witness and corroborating circumstances," when the claim is for an amount that exceeds Five Hundred Dollars ($500.00). When the claim is for an amount under Five Hundred Dollars ($500.00), competent evidence is required. Competent evidence refers to "evidence that tends to establish the fact in issue and does not rest on a mere surmise or guess. *Clifton v. Arnold*, 87 So.2d 386 (La.App. 1 Cir. 1956). An invoice number is insufficient to prove where the work was done and if it was ever paid.

The trial court denied Richard's numerous claims for lawn care and repairs, finding them to be matters of regular maintenance, not reimbursable as necessary expenses under La.Civ.Code arts. 806 and 526, and *Jurgelsky*, 614 So.2d 1331. Where there is exclusive use, routine maintenance is not reimbursable. *See Id.* (plumbing, air conditioning, lawn mower and T.V. repairs considered routine maintenance and not reimbursed); *see also Jones*, 605 So.2d 689 (replacing carpet and stove, painting and plumbing, not reimbursed because no proof of necessity *and* enhancement; where the party had the benefit of using the property for years, these were unreimbursable routine maintenance); *Tarver*, 916 So.2d 1222 (deck and pool liner not proved necessary, and value of home actually went down); *and see Goines v. Goines*, 09-994 (La.App. 5 Cir. 3/9/11), 62 So.3d 193, *writ denied*, 11-721 (La. 5/20/11), 63 So.3d 984 (disallowed reimbursement for payments on a computer loan where husband had exclusive use of the computer).

We note that, pursuant to *Kline v. Kline*, 98-1206 (La.App. 3 Cir. 2/10/99), 741 So.2d 670, real estate taxes and insurance premiums are subject to the exclusive use exception in La.Civ.Code art. 806. It appears, however, that the trial court reimbursed Richard for many of those payments.

29

Finally, in his brief Richard asserts that he is due $6,000.00 as one half of the $12,000.00 he was previously ordered by the court to pay. Of that sum, $10,000.00 was to be deposited for business use by Dede's, and $2,000.00 was to be paid to the mediator. Richard correctly asserts that the court's order indicates that he would receive credit for $6,000.00 in the final partition. Richard asserts that he borrowed the $12,000.00 from his mother. Richard's mother testified at trial regarding donations of stock to Richard and his brother on the other businesses. She was not asked about this $12,000.00 loan, and Richard points to no evidence in the record documenting either the loan or the payments ostensibly made with funds from the loan.

Given the facts of this case, we find no manifest error in the trial court's award of reimbursements to either Richard or Dione. When we offset the reimbursement amounts due to each other ($109,828.54 minus $49,859.75), the difference is $59,968.79. This is the net amount of reimbursement that Richard owes Dione. It will be included in the final equalizing note below.

**EQUALIZING PAYMENT**

Based upon the foregoing amendments to the judgment, the payment necessary to equalize the net assets between the parties is $44,399.67, which constitutes the amount owed by Richard to Dione. We have affirmed the reimbursements awarded to both parties and have determined a differential of $59,968.79. Therefore, the final equalizing payment owed by Richard to Dione is the sum of the two. Hence, Richard is hereby ordered to pay Dione the equalizing payment of $104,368.46.

30

## CONCLUSION

Based upon the foregoing, the amended judgment allocates 508 Prioux, with its attendant debt, to Richard, instead of Dione; it reduces the appraised value of the camp, reallocates the IRAs, giving one half of each, to each; it reduces the Dede's debt allocation; and it deletes the mortgage debt on Old Spanish Trail. Further, the amended judgment affirms the reimbursement claims and recalculates the equalizing payment. The changes are reflected in the following tables; we have placed an asterisk next to the items affected.

| ImmovableAssets | Im-Value | MovableAssets | M-Value | Debt | Net- Dione |
|---|---|---|---|---|---|
| 111 Cove Row | 300,000.00* | Contents | 13,697.50 | | 313,697.50* |
| NorthsideRd/sold | 70,750.00 | | | | 70,750.00 |
| 407 Dahlia | 166,000.00 | | | 142,676.23 | 23,323.77 |
| 407 Wayne | 109,500.00 | | | 54,661.33 | 54,838.67 |
| | | Kia Sorrento | 13,000.00 | 13,000.00 | -0- |
| | | ½ her IRA | 16,889.95* | | 16,889.95* |
| | | ½ his IRA | 49,850.81* | | 49,850.81* |
| | | | | | |
| Her Total | | | | | 529,350.70* |
| | | | | | |
| ImmovableAssets | Im-Value | MovableAssets | M-Value | Debt | Net -Richard |
| 506 Prioux | 245,000.00 | Contents | 19,605.00 | 161,667.02 | 102,937.98 |
| 508 Prioux* | 150,000.00 | | | 89,055.54 | 60,944.46* |
| Dede/Trotter | 224,000.00 | | | 132,226.66* | 91,773.34* |
| Dede/Glaser | 116,500.00 | | | | 116,500.00 |
| | | Suburban | 3,139.00 | | 3,139.00 |
| | | Pick-up | 1,975.00 | | 1,975.00 |
| | | Van | 408.00 | | 408.00 |
| | | Van | 1,014.00 | | 1,014.00 |
| Old Sp. Trail | 125,000.00 | Contents | 9,200.00 | * | 134,200.00* |
| | | Camero | 46,000.00 | 46,000.00 | -0- |
| | | Corvette | 12,500.00 | | 12,500.00 |
| | | Yukon | 24,000.00 | 24,000.00 | -0- |
| | | GW Boat Rig | 10,975.00 | | 10,975.00 |
| | | Scout Bt. Rig | 5,020.00 | | 5,020.00 |
| | | Utility Trailer | 500.00 | | 500.00 |
| Burial Crypt | 9,522.50 | | | | 9,522.50 |
| | | ½ her IRA | 16,889.95* | | 16,889.95* |
| | | ½ his IRA | 49,850.81* | | 49,850.81* |
| | | | | | |
| His Total | | | | | 618,150.04* |
| | | | | | |

| | |
|---|---|
| *His Net Assets* | $ 618,150.04 |
| *Her Net Assets* | -529,350.70 |
| *Difference* | $  88,799.34 |

| | |
|---|---|
| *Equalizing Payment: Richard owes Dione 1/2 of difference* | $   44,399.67 |

| | |
|---|---|
| *Reimbursements to Dione* | $ 109,828.54 |
| *Reimbursements to Richard* | -  49,859.75 |
| *Difference - Richard owes Dione* | $   59,968.79 |

*Equalizing Note:  Richard owes Dione (44,399.67 + 59,968.79) $ 104,368.46*

Costs are assessed equally to Dione W. David and Richard G. David.

**AFFIRMED AS AMENDED.**