585 So.2d 1250 (1991)
Allison Jones STEWART
v.
Dudley Marcus STEWART, Jr.
No. 89-CA-2213.
Court of Appeal of Louisiana, Fourth Circuit.
August 29, 1991.
Rehearing Denied October 16, 1991.
*1251 Robert C. Lowe, Suzette Marie Smith, David M. Prados, Lowe, Stein, Hoffman Allweiss & Hauver, New Orleans, for Allison Jones Stewart.
*1252 Corwin B. Reed, Floyd J. Reed New Orleans, for Dudley Marcus Stewart, Jr., M.D.
Before KLEES, LOBRANO and WARD, JJ.
WARD, Judge.
Dr. Dudley Marcus Stewart, Jr. appeals a judgment of the Trial Court which partitioned the assets and liabilities of the community property regime formerly existing between him and Mrs. Allison Jones Stewart, his divorced wife. The former spouses have agreed to the value and allotment of most of the assets, but there are three areas of dispute which the trial court resolved in favor of Mrs. Stewart. We agree with the trial court decision in the first two areas discussed below; on the third, we reverse.
Dr. Stewart first complains that the Trial Court erred by holding that his partnership interest in Harvey Land Improvement Company ("Harvey Land"), was community property. While the trial court awarded the partnership interest to Dr. Stewart, the trial court also held Dr. Stewart must pay Ms. Stewart one-half its value because it was community property. In 1976 during the existence of the community, Dr. Stewart purchased 1,178 shares of stock in "Harvey Land" from his father. Dr. Stewart signed an act of sale for a price of $29,450.00 and executed a promissory note in that amount payable to his father on demand, without interest. Dr. Stewart testified at trial and now argues on appeal that the stock was his separate property because the sale was not actually a sale but rather a "donation" from his father to him. His father never demanded payment and he contends that his father left nothing to him in his will "presumably because of the gift of stock made to him in 1976."
The corporation has been dissolved and Dr. Stewart now owns a partnership interest. However, that partnership interest was a direct exchange for the stock, and if the stock was community property so then is the partnership interest.
To prove the stock was community property Mrs. Stewart offered evidence of the written sale of the stock and the accompanying note and the manner in which Dr. Stewart dealt with the stock from the time of purchase. From the time Dr. Stewart purchased the stock until the termination of the community, the couple filed joint tax returns, listing the dividends received from the stock as community income. Moreover, on July 31, 1976 Dr. Stewart submitted a financial statement to a Baton Rouge bank on which he listed the stock as an asset and the $29,450.00 promissory note as a liability. Additionally, Dr. Stewart admitted that he and Mrs. Stewart consulted an attorney in 1981 about the possibility of a joint donation of the "Harvey Land" stock to their children. Dr. Stewart's argument that he was not included in his father's will because his father intended the stock to be an inter vivos donation in lieu of a legacy is unpersuasive, since his father's entire estate was given to Dr. Stewart's children, grandchildren of the decedent.
Because the "Harvey Land" stock was acquired during the existence of the community regime, it is presumed to be community property. La.C.C. arts. 2340, 2338. Dr. Stewart bears the burden of proving otherwise, through proof which must be "strict, clear, positive and legally certain." La.C.C. art. 2340; Martinez v. Martinez, 556 So.2d 668, 675 (La.App. 4 Cir.1990).
The manifest errorclearly wrong, standard demands great deference to the trier of fact's finding. Rosell v. Esco, 549 So.2d 840 (La.1989). We find no merit in the first assignment of error.
The second area of dispute is whether Mrs. Stewart can own stock in Dr. Stewart's medical corporation, and if sowhat was the value of that community asset? Dr. Stewart argues the Trial Court erred by permitting Mrs. Stewart to participate in the medical earnings of Dr. Stewart's professional medical corporation, because La.R.S. 12:901 et seq. prohibits ownership of stock in a medical corporation by a person not licensed to practice medicine. La. R.S. 12:901 et seq. does not apply to this *1253 situation. If it did, it would defy community property laws and although R.S. 12:905(B) provides that stock in a medical corporation must be held by a licensed physician or another medical corporation, Mrs. Stewart is nevertheless entitled to one-half of the value of the medical corporation at partition. Pearce v. Pearce, 482 So.2d 108 (La.App. 4 Cir.1986).
To establish the value of Dr. Stewart's medical corporation, Mrs. Stewart offered the testimony of a financial expert, Michael Kingsberry, who testified that the value of Dr. Stewart's medical practice was $80,500.00, at the time of trial, December 1988. Dr. Stewart offered the testimony of Henry Carrigee, Jr., his C.P.A. Mr. Carrigee testified that his calculations showed the value of the corporation was lower, but his figures were based on the 1987 financial condition of the medical practice rather than in December 1988, when this matter was tried. La.R.S. 9:2801(4)(a) requires that assets must be valued at the time of trial of the merits of the partition, in this case, December 1988.
Although Dr. Stewart complains the $80,500 figure is excessive, he also contends it is erroneous because Kingsberry did not include in his calculations $10,000 for legal fees. Neither Dr. Stewart's or Mrs. Stewart's expert testified about legal fees. Dr. Stewart did not prove that his practice was discounted because this liability was not included; he did not present evidence that the liability even existed.
Weighing the testimony of the financial experts and the documentary evidence of the financial value of the medical practice, the Court stated:
The Court finds the value of Dr. Stewart's medical practice is $80,500.00 based on the testimony of Mrs. Stewart's accountant who valued the practice. His testimony was more credible to the Court.
In light of the foregoing, we cannot conclude the Court erred on these issues.
The last area of dispute concerns the value of Mrs. Stewart's art work and whether the Court should have credited her share of the community for that amount. Everyone agrees that her creationsmore than 200 pieces of artare community property. The dispute arises over how to allocate their value. Dr. Stewart contends the art should be appraised and allocated to Ms. Stewart, and her share of the community credited for the value of the art. This argument is based on La.R.S. 9:2801 which provides in part:
(4)(c) The court shall allocate or assign to the respective spouses all of the community of assets and liabilities. In allocating assets and liabilities, the court may divide a particular asset or liability equally or unequally or may allocate it in its entirety to one of the spouses. The court shall consider the nature and source of the asset or liability, the economic condition of each spouse, and any other circumstances that the court deems relevant....
In her reasons for judgment, the Trial Judge noted:
Allison Jones Stewart is a well known artist in the community. The sale of her art in Louisiana is subject to existing contracts with Arthur Roger's Gallery, and the sale of her art in Florida is subject to a contract with Barbara Gillman. Because it is difficult, if not impossible, to value art listed for sale but unsold for three years, and because Dr. Stewart produced no evidence concerning the value of the art work, this Court finds that the art extant at the termination date, August 1986, shall continue to be listed for sale pursuant to the presently existing contracts. The net proceeds on sale shall be divided equally between the parties. Each party shall bear their own income taxes on receipt of the sales' proceeds.
Although the statute gives the trial court latitude to achieve an equitable distribution of assets and liabilities between spouses in judicial partitions of community property, Pitre v. Pitre, 501 So.2d 344 (La.App. 3 Cir.1987), we believe the intent of R.S. 9:2801 is to require the trial court to make a final apportionment of the assets and liabilities. As an indication of *1254 that intent, R.S. 9:2801(4)(c) says "The court shall allocate ...". And paragraph (d) even gives the Court discretion to order the parties to draw lots for the asset, or the court may even order a private sale. In other words, the whole of R.S. 9:2801 indicates an intent to require an immediate division of the community. If community property is not divided, this means co-ownership. And co-ownership means La.C.C. Art. 807 is applicable. La.C.C. art. 807 says:
No one may be compelled to hold a thing in indivision with another unless the contrary has been provided by law or judicial act. Any co-owner has the right to demand partition of a thing held in indivision....
We do not believe R.S. 9:2801, by providing for allocation of community property, is meant to be one of the exceptions to Art. 807, supra, and therefore problems of partition bring us full circle to the issue of dissolution of the community.
There are good practical reasons why the community should be divided with finality, vividly illustrated by the facts of this case. If the former spouses remain co-owners, who decides what price to charge for the art? Or what gallery will display it? Or when to accept an offer? These questions only illustrate that when the trial court requires co-ownership over the objection of one of the spouses, future disputes are not only likely, they are a certainty, and this means future litigation. For these reasons we hold the trial court erred. We therefore amend the judgment and remand to the trial court for an immediate appraisal of the art. Considering the nature and source of the more than 200 pieces of art created by Mrs. Stewart, the value of the art shown by the appraisal must be credited to Allison Jones Stewart.
For the foregoing reason, the judgment of the lower court is reversed in part and remanded. In all the other respects, the judgment is affirmed.
AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

REHEARING DENIED
Dr. Dudley Stewart urges this Court to grant him a "rehearing" on the issue of the partition of his pension plan. He complains that the Trial Court applied the "fixed percentage" formula of Sims v. Sims, 358 So.2d 919 (La.1978). Dr. Stewart's request is denied for two reasons; first, he did not appeal the pension plan partition, and, second, the parties stipulated in the Trial Court to the use of the Sims formula in fixing the value of various assets, among them, the pension plan.