SUSAN M. CHEHARDY, Judge.
|2This appeal arises in a community property partition proceeding. At issue is whether the plaintiff-husband must continue to hold shares in a closed corporation that were apportioned to him in the partition, or whether he is entitled to have all the shares allocated to the defendant-wife in return for an equalizing payment. Finding no error in the trial court’s determination, we affirm.
.FACTS
The parties, Dr. Horatio Sprague Eustis and Ms. Sheldon Lykes, were married in 1979 and divorced in 2008. The marital community was terminated effective May 8, 2007, the date the petition for divorce was filed. At the time of the partition, the parties had community assets valued at approximately five million dollars, consisting of property, stocks, bonds, pensions, and cash. Ms. Lykes also had a significant sum of money that she sought to have designated as her separate property.
In March 2010 the district court appointed a Special Master to assist the court in determining whether certain accounts were community or separate property, and to help allocate the community portion. Among the assets was a fifty percent interest in L & E Properties, L.L.C. (hereafter “L & E”), a family corporation that owns property in North Carolina.
|3The Special Master issued his report in December 2010. Because the trial judge later adopted the Special Master’s report in full, we quote extensively from it, since the statements therein now constitute the trial court’s findings.
*2 With respect to the community asset at issue on this appeal — the parties’ interests in L & E — the Special Master stated as follows, in pertinent part:
14. Community Interest in L & E Properties, L.L.C. (50% Interest)
This item involves a membership interest or interests in a North Carolina limited liability company which was formed during the marriage for the purpose of developing rural real estate located in that state. The Articles of Organization for L & E Properties, L.L.C. ... designated Ms. Lykes’ brother, Thompson Lykes, as the Managing Member and designated the entity as a “Manager-Managed L.L.C.” in which the members are not managers. The Special Master was also provided with an unsigned copy of an Operating Agreement for the L.L.C. which indicated on Schedule I that Ms. Lykes was the record owner of a fifty (50%) percent membership interest. Another single page version of Schedule I was included with the documents provided which indicated that Dr. Eustis and Ms. Lykes each owned a twenty-five (25%) percent membership interest.... The tax returns for the L.L.C. for 2005 and 2006 which were provided to the Special Master reflect a change in the membership interest between the two (2) years whereby Ms. Lykes’ interest decreased to twenty-five (25%) percent and Dr. Eustis acquired a twenty-five (25%) percent membership interest.
[[Image here]]
The parties originally both concurred that the total fifty (50%) percent membership interest in L & E Properties, L.L.C. constituted community property and stipulated during the initial meeting with the Special Master that the fifty (50%) percent membership interest should be valued at $1,187,500.00....
[[Image here]]
In any event, the Special Master recommends based upon the documentation provided that the full fifty (50%) percent membership interest be treated as community property....
The original issue presented to the Special Master regarding this asset was what to do with it in terms of allocation, sale, etc. Ms. Lykes contends that the |4membership interest(s) should be divided in kind (each retain a 25% membership interest) based upon the fact that Dr. Eustis was the original driving force along with her brother, Thompson Lykes, to form the L.L.C. and purchase the investment real estate. Ms. Lykes also argues that it would be inequitable to saddle her with this entire investment which has apparently significantly dropped in value and which has failed to realize a sale of a single lot in the last six (6) years. Finally, she contends that all the restrictive language of the Articles of Organization and Operating Agreement apply equally to her and could be equally damaging to her. Dr. Eustis acknowledged in his testimony that it was his idea originally for the investment, but that Ms. Lykes quickly jumped on board, which is perhaps reflective of why the original membership was placed in her name only.
Dr. Eustis, for his part, contends that it would be grossly inequitable for him to be forced to remain a minority interest holder in a limited liability company where Ms. Lykes and her brother have a combined majority membership interest and Ms. Lykes’ brother is the “Manager” with authority to unilaterally made [sic] decisions concerning the company operations. He acknowledged, however, in his testimony that to date he had no problems dealing with Ms. Lykes’ brother, or for that matter Ms. *3 Lykes, regarding this property. Both parties also acknowledged that it was always intended that Thompson Lykes would be the primary manager of the property which is again reflected in the Operating Agreement where he is designated Manager.
Dr. Eustis likewise also expressed a concern that he might in the future be squeezed out of his interest in the L.L.C. due to the superior financial positions of Ms. Lykes and her brother. Specifically, he testified that if the majority membership interest voted to invest substantial additional funds to further develop property and sought additional capital contributions, he might be unable to contribute his share of the development costs. Nothing in the unsigned Operating Agreement for the L.L.C. provides for any loss of membership interest in that situation. In fact, the Operating Agreement allows the other members to effectively loan Dr. Eustis his portion of the funds at an interest rate of three (3%) percent over the prime rate to be recovered out of future distributions.
Dr. Eustis also correctly points out that Section 9.2 of the Operating Agreement designates the manager as the sole decision maker in deciding whether any cash ^distributions should be made to members. Furthermore, under Section 10.1 of the Operating Agreement, Dr. Eustis could not transfer his membership interest to anyone else without the manager’s approval and Section 11.1 precludes the withdrawal of a member except under limited circumstances.
[[Image here]]
Dr. Eustis cites three (8) cases which he contends support allocating all of membership interest in L & E Properties, L.L.C. to Ms. Lykes. The Special Master finds one of the cases applicable under the facts presented here....
This is a difficult issue for the Special Master to decide. First, the asset still has substantial value ($1,187,000.00) such that allocation of the entire membership interest to one party or division of the interest in kind will have a significant effect on the overall partition. Second, by all accounts, the asset has significantly declined in value and the prospects for any near-term revenue generation appear unlikely. Third, while Dr. Eustis has apparently not as yet had any significant disagreements with the management of the business, Ms. Lykes and her brother’s majority ownership interests and her brother’s position as sole manager may potentially seriously negatively impact Dr. Eus-tis’ ability to exercise any control over the business, realize any revenues from the investment, transfer his interest to a third party or withdraw from the company. Contrastingly, it does not seem equitable or fair to saddle Ms. Lykes with this non-performing asset just because her brother is its manager and restrictive conditions on members are included in the L.L.C. documents, circumstances which existed both when the company was formed and when Dr. Eustis acquired his own twenty-five (25%) percent interest.
According to information provided to the Special Master by the parties, efforts had previously been made to carve out a portion of the property for Dr. Eustis which would have a value commensurate with a 25% interest. This would probably be the most equitable result. As the Zeigler, supra Court noted, “[I]f simple pieces of real estate were involved, the solution might be to assign them by lots”. Here, unfortunately, those lots are owned by an L.L.C. and not individually and the Spe *4 cial Master does not believe the Court has authority to order a division in kind.
Under the circumstances, the Special Master believes this issue should be deferred to the trial judge | fifor decision and declines to make a recommendation regarding allocation. For purposes of the remaining recommendations in this report, including the recommended allocations, the 50% membership interest in the company will be treated as unparti-tioned.
Dr. Eustis objected to the Special Master’s failure to allocate the L & E interests. He filed a motion to set the community property partition for trial on the merits. The only issue before the court was allocation of the L & E interests.
The matter was submitted to the trial court based on documents already in the record. On April 7, 2011 the trial court issued a written judgment in which it decreed that Dr. Eustis and Ms. Lykes shall each retain their twenty-five percent interest in L & E. The judgment denied Ms. Lykes’ alternative request to find that these interests are the separate property of the parties. Dr. Eustis filed a devolu-tive appeal of that ruling.
Subsequently, on June 1, 2011, the court rendered judgment on the entire partition proceeding. In it the court stated it accepted the report of the Special Master and rendered judgment accordingly. The judgment apportioned the community property as set out in the Special Master’s report. With respect to the L & E interests — which the Special Master had refrained from allocating, preferring to leave it to the district court — the court awarded to each party the twenty-five percent interest in L & E Properties, LLC, standing in that party’s name. The judgment made clear that the property conveyed in it was in full satisfaction of their shares in the community, as follows:
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the following assets be and are hereby partitioned to SHELDON LYKES, as her full share of the community of acquets and gains previously existing between she and HORATIO SPRAGUE EUS-TIS, JR., and in full satisfaction of her reimbursement claims:
[[Image here]]
[712. The twenty-five (25%) percent interest in L & E Properties, LLC standing in the name of SHELDON LYKES.
[[Image here]]
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that all right, title, and interest of HORATIO SPRAGUE EUSTIS, JR. in and to the above-described property is hereby conveyed, transferred, assigned, delivered, and allocated to SHELDON LYKES in full ownership, TO HAVE AND TO HOLD UNTO SHELDON LYKES, HER HEIRS AND ASSIGNS FOREVER.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the following assets be and are hereby partitioned to HORATIO SPRAGUE EUS-TIS, JR., as his full share of the community of acquets and gains previously existing between he and SHELDON LYKES and in full satisfaction of his reimbursement claims:
[[Image here]]
11. The twenty-five (25%) percent interest in L & E Properties, LLC standing in the name of HORATIO SPRAGUE EUSTIS, JR.
[[Image here]]
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that all right, title, and interest of SHELDON LYKES in and to the above-described property is hereby conveyed, trans *5 ferred, assigned, delivered, and allocated to HORATIO SPRAGUE EUSTIS, JR. in full ownership, TO HAVE AND TO HOLD UNTO HORATIO SPRAGUE EUSTIS, JR., HIS HEIRS AND ASSIGNS FOREVER.
From that ruling Dr. Eustis appeals.[1]
ARGUMENTS
The only issue on appeal is whether the trial court erred in assigning the parties each a twenty-five percent interest in L & E, rather than fifty percent interest to one of the parties with an equalizing payment to the other party.
Dr. Eustis assigns the following as errors:
1. The trial court abused its discretion by failing to make a final and complete partition of a community asset in accordance with La. R.S. 9:2801. | RSpecifically, the court erred by allowing Dr. Eustis and Ms. Lykes to remain undivided co-owners of L & E Properties.
2. The trial court abused its discretion by failing to allocate the community asset, L & E Properties, LLC, to Ms. Lykes.
In his first assignment Dr. Eustis complains the trial court erred by forcing him to remain a co-owner with Ms. Lykes of the interests in L & E. He asserts that pursuant to La. R.S. 9:2801, the trial court should have ordered a final and complete partition of L & E. He contends that L & E should be allocated to Ms. Lykes and that she should be ordered to pay him an equalizing payment.
Dr. Eustis argues that if he and Ms. Lykes each keep a twenty-five percent interest in L & E Properties, LLC, he would be forced to remain a minority shareholder in a business enterprise with his ex-wife and former brother-in-law. Moreover, his former brother-in-law, Thompson Lykes, is the sole manager of the family partnership with unilateral decision-making authority. Dr. Eustis freely admits he agreed to this arrangement when he and Ms. Lykes were married; however, now that he is no longer a member of the family, he suggests that it is an untenable business situation.
Ms. Lykes claims that because there has been no acrimony since the divorce with regard to the management of L & E, Dr. Eustis’s claim that it is an untenable business situation is nebulous.
Dr. Eustis points out that the real estate market collapsed at approximately the same time as the petition for divorce was filed. Thus, L & E Properties, LLC has existed as a dormant corporation for the past several years. No property has been sold in six years and no further development of the land has taken place. There has been no acrimony or “ill will” simply because no decisions have been |flmade. Contrary to Ms. Lykes’ claim, he contends, there is no evidence of L & E being actively managed with the three parties getting along well post-divorce.
Dr. Eustis states he articulated specific concerns to the Special Master regarding why he sought to have the entire fifty percent community share of L & E allocated to Ms. Lykes: First, Ms. Lykes and her brother have a significant amount of inherited wealth. Therefore, if the majority membership interest voted to invest substantial funds to further develop the property, Dr. Eustis asserts he would be unable to contribute his share of developmental costs.
The Special Master pointed to a provision in the Operating Agreement allowing Ms. Lykes or her brother to lend Dr. *6 Eustis his portion of the funds, to be recovered out of future distributions. Dr. Eustis suggests that on a physician’s salary, coming up with money for further investment might be prohibitive. Theoretically, he argues, Thompson Lykes could continually request additional development funds without ever paying out future distributions. Dr. Eustis states he “simply cannot afford to be in the development business with multimillionaires.”
Dr. Eustis’s second concern is Section 9.2 of the Operating Agreement, which designates Thompson Lykes as the sole decision-maker in deciding whether cash distributions should be made to members. That means that Dr. Eustis has no control over if and when he would receive a stream of revenue from L & E Properties, LLC. His concern is that because the Lykes financial position is superior to his, Thompson Lykes could determine as manager that payment of revenues is not as important as additional investment for development. Dr. Eustis claims the result could be that he would be forced to take additional loans from the other stockholders without any stream of revenue from the corporation in the 1 ^foreseeable future. He states that because his ex-wife is in no need of income, she would not have an issue with this management/investment strategy.
Dr. Eustis’ final concern, as expressed to the Special Master, is sections 10.1 and 11.1 of the Operating Agreement. Section 10.1 states that he cannot transfer his membership interest to anyone else without Thompson Lykes’ approval. Section 11.1 precludes withdrawal from the corporation except in limited circumstances. If the business arrangement is unworkable, Dr. Eustis asserts, he will be stuck with little recourse to remedy the situation.
In response to the first assignment, Ms. Lykes contends the trial court was not wrong when it allocated to each party a twenty-five percent interest in L & E. Ms. Lykes asserts the allocations did not violate La. R.S. 9:2801, but rather were in accordance with paragraph (A)(4)(c) of the statute, which states, “In allocating assets and liabilities, the court may divide a particular asset or liability equally or unequally or may allocate it in its entirety to one of the spouses.”
In his second assignment, Dr. Eustis contends the trial court abused its discretion by failing to allocate the community asset, L & E Properties, LLC, to Ms. Lykes. He contends that for all the reasons set forth in support of his first assignment, “it makes more sense for Ms. Lykes to remain in business with her brother, Thompson Lykes.” Further, given the parties’ respective financial circumstances, “it is more equitable for the party with access to millions of dollars in cash to be awarded the asset which might require additional funding and might not produce a revenue stream for many years.”
In opposition, Ms. Lykes argues that the trial court fully partitioned the community property when it allocated each party a twenty-five percent interest in L & E Properties, LLC. She asserts that during the marriage the parties acquired the fifty percent ownership interest in L & E at the urging of Dr. Eustis, that it was a 11! community asset. Thus, at termination of the community, pursuant to the L & E operating agreement Dr. Eustis and Ms. Lykes each enjoyed a twenty-five percent interest in L & E, resulting in a fifty percent community interest of which the parties were undivided co-owners. Hence, Ms. Lykes contends, the June 1, 2011 judgment partitioning the community property properly divides the fifty percent community interest equally, allocating twenty-five percent interest in L & E to each party in his or her own name, so that *7 they are no longer undivided co-owners, but instead each owns a twenty-five percent interest as a passive investor.
Ms. Lykes asserts that, unlike the situations in the Stewart and Goins cases cited by Dr. Eustis, in which the courts were required to partition corporeal property, here the trial court allocated incorporeal property — an ownership interest in a limited liability company. Pursuant to La. R.S. 9:2801(A)(4)(c), Ms. Lykes argues, the trial court had the authority to allocate the asset equally or unequally. Here the trial court divided the asset equally, she contends, and there is no showing that the court was clearly wrong in its determination.
LAW AND ANALYSIS La. R.S. 9:2801 sets out the procedure for partition of community property as follows, in pertinent part:
A. When the spouses are unable to agree on a partition of community property or on the settlement of the claims between the spouses arising either from the matrimonial regime, or from the co-ownership of former community property following termination of the matrimonial regime, either spouse ... may institute a proceeding, which shall be conducted in accordance with the following rules:
[[Image here]]
(c) The court shall allocate or assign to the respective spouses all of the community assets and liabilities. In allocating assets and liabilities, the court may divide a particular asset or liability equally or unequally or may allocate it in its entirety to one of the | ^spouses. The court shall consider the nature and source of the asset or liability, the economic condition of each spouse, and any other circumstances that the court deems relevant....
(d) In the event that the allocation of assets and liabilities results in an unequal net distribution, the court shall order the payment of an equalizing sum of money, either cash or deferred, secured or unsecured, upon such terms and conditions as the court shall direct. ...
[[Image here]]
Dr. Eustis contends the assignment of twenty-five percent interests to each of the parties was a failure by the trial court to apportion the L & E interests and, hence, a violation of La. R.S. 9:2801. He cites Stewart v. Stewart, 585 So.2d 1250 (La.App. 4 Cir.1991), writs denied, 590 So.2d 594 and 590 So.2d 597 (La.1992), and Goines v. Goines, 09-994 (La.App. 5 Cir. 3/9/11), 62 So.3d 193, writ denied, 2011-0721 (La.5/20/11), 63 So.3d 984.
In Stewart, the parties disputed allocation of 200 pieces of art by Mrs. Stewart, who was a well-known artist. Specifically, the parties disagreed on how they should be valued and to whom they should be allocated. The trial judge in Stewart ordered that the pieces should remain listed for sale at their respective galleries, with the net proceeds of sale to be divided equally between the parties. The fourth circuit found that the trial court had erred, however, because the court’s ruling required the parties to remain undivided co-owners of the artworks until all the pieces were sold. The court of appeal cited La. C.C. art. 807, which states, “No one may be compelled to hold a thing in indivisión with another unless the contrary has been provided by law or judicial act. Any co-owner has the right to demand partition of a thing held in indivisión....” The court concluded that La. R.S. 9:2801, by providing for allocation of community property, was not meant to be an exception to Art. 807.
*8 | iSInstead, the court ruled, the problems inherent in the parties’ remaining undivided co-owners of the artwork required that the artwork be appraised and its value credited to Mrs. Stewart as part of her share of the community:
There are good practical reasons why the community should be divided with finality, vividly illustrated by the facts of this case. If the former spouses remain co-owners, who decides what price to charge for the art? Or what gallery will display it? Or when to accept an offer? These questions only illustrate that when the trial court requires co-ownership over the objection of one of the spouses, future disputes are not only likely, they are a certainty, and this means future litigation. For these reasons we hold the trial court erred.
Stewart, 585 So.2d at 1254.
In Goines, the trial court placed a valuation on the community home, but failed to allocate the home to either party. On appeal, this Court determined the trial court erred in rendering a judgment that partitioned the community without specifically allocating the community home to one of the parties or, alternatively, disposing of the home as provided in La. R.S. 9:2801(A)(4)(e) or (f). Because the court failed to follow the procedures set out in that statute, we remanded the case for completion of the partition proceedings because there was insufficient evidence for this Court to complete the partition.
Unlike the situations in Stewart and Goines, in which the courts were required to partition corporeal property, the trial court in this case allocated incorporeal property — ownership interests in a limited liability company. Pursuant to La. R.S. 9:2801(A)(4)(e), the tidal court had the authority to allocate the asset equally or unequally. Here the trial court divided the asset equally. Further, it is clear that the parties own their respective twenty-five percent interests separately, not as undivided co-owners. There is no showing that the court was clearly wrong in its determination.
i14decree
For the foregoing reasons, the judgment is affirmed. Costs of appeal are assessed against the appellant, Horatio Sprague Eustis.

AFFIRMED

. His appeal was filed as a suspensive appeal, but was converted to a devolutive appeal by this Court in response to Sheldon Lykes’ Motion to Dismiss the Appeal.