STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

15-828


STEPHANIE KEENAN

VERSUS

HORACE KEENAN, III

**********

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 85,749 DIVISION B
HONORABLE C. ANTHONY EAVES and HONORABLE JOHN C. FORD,
DISTRICT JUDGES

**********

MARC T. AMY
JUDGE

**********

Court composed of Marc T. Amy, Billy Howard Ezell, and David Kent Savoie, Judges.


AFFIRMED IN PART AND AFFIRMED AS AMENDED; REVERSED IN PART; AND REMANDED FOR FURTHER PROCEEDINGS.

E. Grey Burnes Talley
Burnes , Burnes & Talley
Post Office Box 650
Alexandria, LA   71309-0650
(318) 442-5231
COUNSEL FOR PLAINTIFF/APPELLANT:
     Stephanie Keenan

Mary K. Beaird
109 South Third Street
Leesville, LA   71446
(337) 944-0299
COUNSEL FOR DEFENDANT/APPELLANT:
     Horace Keenan, III

**AMY, Judge.**

The parties to this matter were formerly married and sought a judicial partition of community property. After a hearing, the trial court entered judgment which ultimately awarded the family home to the former wife and ordered an equalizing payment to the former husband. Both parties appeal. For the following reasons, we amend the judgment in part and affirm as amended; reverse in part; and remand for further proceedings.

## Factual and Procedural Background

The parties, Stephanie Keenan and Horace Keenan, III, were married in 1989. Stephanie later sought a divorce. The record indicates that the parties have a son, Xavier, who was a minor at the time the divorce action was instituted but who is now in college. A judgment of divorce was rendered in 2012 which terminated the community of acquets and gains as of December 1, 2011. Thereafter, Stephanie filed a petition for partition of community property.

According to the record, both parties were employed by the United States Army at some point during the marriage. Stephanie indicated that both she and Horace were in the military initially, but she left the service in order for Horace to further his career. After their separation, Stephanie rejoined the military. Previous orders of the trial court awarded Stephanie 50% of Horace's military retirement and $960.00 per month in child support. The record also indicates that both Stephanie and Horace were eligible for Post-9/11 GI benefits.

The record indicates that the parties previously owned two parcels of immovable property, one in Texas and one in Hawaii. The Texas property was unencumbered, but there was a mortgage on the Hawaii property. Stephanie initially received the rental income from both properties, and Horace paid the

mortgage on the Hawaii property. However, Horace was later awarded the rental income from both properties starting on July 23, 2012. The Hawaii property was sold before trial, but the parties remained in possession of the Texas property.

The record also indicated that the parties possessed various movables, bank accounts, and savings bonds. Stephanie disputed the community nature of some of these items and their value. Further, both parties sought reimbursement for various items. Horace sought reimbursement for mortgage payments for the Hawaii property, property taxes for the Texas property, utility bills, and expenses associated with the sale of the Hawaii property. Stephanie sought reimbursement for payments she made on a community credit card and tuition expenses for Xavier. She also asserted that Horace had concealed a significant amount of funds from her.

After a trial, the trial court found that each party should retain the community movables in their possession with no equalization payment being required. Further, the trial court determined that Stephanie was entitled to reimbursement totaling $38,456.75 for various items and Horace was entitled to reimbursement totaling $12,424.12 for various items. The trial court awarded possession of the Texas property to Stephanie and, after determining the value of that property to be $98,000.00, awarded an equalizing payment of $22,967.37 to Horace.

Both parties appeal. Horace asserts as error that:

1. The Trial Court erred in failing to include in its calculation all of the community movables, including but not limited to clothes, household items, collectibles, etc., in the possession of Stephanie Keenan both currently and as of the date of the hearing to determine division of community property.

2. The Trial Court's finding that there was a profit generated from the sale of the Hawaii home in the amount of $30,000.00 was clearly erroneous as it failed to consider the fees and other closing costs to be paid to the realtor for the sale of the home.

3. The Trial Court erred in failing to order reimbursement in favor of Horace Keenan for paying the Hawaii home mortgage since the date of termination of the community until the home sold with his separate monies.

4. The Trial Court was manifestly erroneous in failing to award Horace Keenan reimbursement for half the value of the rental income Stephanie Keenan was receiving from the date of termination of the community property regime, December 1st, 2011, until July 23rd, 2012[,] when the court ordered Horace Keenan to receive rental income due to his paying all expenses therefor.

5. The Trial Court erred in failing to award Horace Keenan reimbursement for half of the $8,992.06 he paid with his separate money in order to finalize the sale of the Hawaii home.

6. The Trial Court's finding that rental income should be reimbursed to Stephanie Keenan, for the Texas home, is clearly erroneous.

7. The Trial Court erred in failing to address the savings bonds purchased by Stephanie Keenan with community funds during the marriage as Horace Keenan is entitled to half the value of the bonds that were purchased.

8. The Trial Court erred by failing to award Horace Keenan credit for reimbursement for utilities for the Hawaii home and other random expenses that were paid as a necessary expense for the community when physical proof was introduced into evidence that such expenses occurred and were paid by him.

9. The Court was manifestly erroneous in its ruling as the Written Reasons do not accurately address the issues and the evidence before the Court.

Stephanie's assignments of error are:

[1.]   It was error for the Trial Court to find that post-termination rental income on the Texas house was only $10,800.00 by the date of trial.

[2.]   It was error for the Trial Court to find expenses Horace Keenan paid on the sale of the Hawaii house to be $11,999.80.

[3.]  It was error for the Trial Court to find that Horace Keenan paid Texas real estate taxes (after termination of the community property regime) in the amount of $12,848.44.

[4.]  It was error for the Trial Court to require Stephanie Keenan [to] pay the net reimbursement claim before being awarded ownership of the Texas house.

[5.]  It was error for the Trial Court to deny Stephanie Keenan's request for reimbursement of her post-9/11 GI Bill benefits used by agreement of the parties for their son, Xavier's college expenses, when Horace Keenan's post-9/11 GI Bill benefits were used by him alone.

[6.]  It was error for the Trial Court to not award the former community movables.

## Discussion

*Trial Court's Reasons*

We first address Horace's assignment of error concerning the trial court's written reasons. Horace contends that they are inaccurate and do not comport with the issues. He requests that this court perform a de novo review. Horace does not cite any statutory or jurisprudential authority for such a review.

"Appeals are taken from the judgment, not the reasons for judgment" and the reasons "are merely an explication of the trial court's determinations. They do not alter, amend, or affect the final judgment being appealed[.]" *Winbery v. Louisiana College*, 13-339, p. 9 (La.App. 3 Cir. 11/6/13), 124 So.3d 1212, 1217-18 (quoting *Wooley v. Lucksinger*, 09-571, 09-584, 09-585, 09-586 (La. 4/1/11), 61 So.3d 507, and *State in the Interest of Mason*, 356 So.2d 530 (La.App. 1 Cir. 1977)), *writs denied*, 13-2844, 13-2859 (La. 4/11/14), 137 So.3d 1215. Further, "[i]n general, if the appellate court believes that the trial court reached the proper result, it will affirm the judgment." *David v. David*, 12-1051, p. 4 (La.App. 3 Cir. 4/10/13), 117 So.3d 148, 152, *writ denied*, 13-1541 (La. 10/4/13), 122 So.3d 1023. Although we

4

conclude that some of the trial court's awards were manifestly erroneous, it is the judgment that we amend, not the reasons. Accordingly, we find no merit to this assignment of error.

*Partition*

Louisiana Revised Statutes 9:2801(A) addresses the partition of community property, and provides, in relevant part, that:

> (4) The court shall then partition the community in accordance with the following rules:
>
> (a) The court shall value the assets as of the time of trial on the merits, determine the liabilities, and adjudicate the claims of the parties.
>
> (b) The court shall divide the community assets and liabilities so that each spouse receives property of an equal net value.
>
> (c) The court shall allocate or assign to the respective spouses all of the community assets and liabilities. In allocating assets and liabilities, the court may divide a particular asset or liability equally or unequally or may allocate it in its entirety to one of the spouses. The court shall consider the nature and source of the asset or liability, the economic condition of each spouse, and any other circumstances that the court deems relevant. As between the spouses, the allocation of a liability to a spouse obligates that spouse to extinguish that liability. The allocation in no way affects the rights of creditors.
>
> (d) In the event that the allocation of assets and liabilities results in an unequal net distribution, the court shall order the payment of an equalizing sum of money, either cash or deferred, secured or unsecured, upon such terms and conditions as the court shall direct. The court may order the execution of notes, mortgages, or other documents as it deems necessary, or may impose a mortgage or lien on either community or separate property, movable or immovable, as security.

The trial court's findings of fact are subject to the manifest error/clearly wrong standard of review. *David*, 117 So.3d 148. However, the trial court is accorded broad discretion in resolving community property disputes. *Williams v. Williams*, 07-541 (La.App. 3 Cir. 10/31/07), 968 So.2d 1234. The majority of both

5

parties' arguments concern the propriety of the trial court's findings of fact with regard to partition of the former community regime's assets. Given the trial court's directive to "consider the nature and source of the asset or liability, the economic condition of each spouse, and any other circumstances that the court deems relevant" in allocating assets and liabilities, we conclude that it is appropriate to address these claims together rather than piecemeal. La.R.S. 9:2801(A)(4)(c).

*Movables*

Both parties complain that the trial court erred in not awarding the former community movables. The record reflects that the trial court, in its written reasons, found that each party was to "retain in their possession the movable items they have with no equalization payment being required."

Horace specifically complains that the trial court failed to include some items in its calculations, such as crystal figurines, electronics, furniture, and vehicles. Horace asserts that all of the movables are in Stephanie's possession, and the total of the values assigned to these items by Horace is $35,238.50. Stephanie concedes that most of the movables are in her possession, but contends that it "strains the imagination" that Horace has no community movables in his possession. According to Stephanie's trial testimony, the movables are worth "at most" $15,000.00, "strictly on calculating the crystal." Stephanie requests that this court either uphold the trial court's award of the movables or remand the matter for further evidence to be taken on this issue.

Stephanie's testimony at trial was that she did not know what several of the items on Horace's detailed descriptive list were, and that if it was not listed on her list, she did not have those items. According to Horace, the last time he saw many

6

of the items on his list was in Hawaii. Horace testified that after the family moved to Louisiana, many of their items were placed in storage. He thought that Stephanie "probably" had those items in storage somewhere else.

Stephanie also testified that many of the things listed were gifts to either herself or Xavier, such as a laptop and the crystal figurines. According to Stephanie, two carved wooden items listed on Horace's detailed descriptive list were gifts to her from coworkers. Horace subsequently conceded that those two items were not community property, but contested Stephanie's assertion that the other items were gifts.

After reviewing the record, we find no abuse of discretion in the trial court's disposition of the community movables issue. There is a rebuttable presumption that property acquired during the existence of the community is community property, and either spouse may rebut the presumption by proving the separate nature of the property. *McCorvey v. McCorvey*, 05-889 (La.App. 3 Cir. 2/1/06), 922 So.2d 694, *writ denied*, 06-435 (La. 4/28/06), 927 So.2d 295. Further, the classification of property as separate or community is fixed at the time of acquisition. *Id*. The trial court's factual finding with regard to that issue is subject to the manifest error standard of review. *Bhati v. Bhati*, 09-1030 (La.App. 3 Cir. 3/10/10), 32 So.3d 1107.

With regard to the most valuable items, the crystal figurines, Stephanie testified that they were gifts. However, Horace claimed that, although the parties had separated at that time, he purchased them for "the house" and not his wife. Since he was overseas, he sent them to Stephanie's address. There is sufficient evidence in the record such that the trial court could have credited Stephanie's

7

testimony that several of the items listed in Horace's detailed descriptive list were gifts to either her or Xavier, and thus not community property.

The trial court does not err in making valuations of community assets based on the parties' testimony when the parties do not submit evidence with regard to the current value of those assets. *McCorvey*, 922 So.2d 694. Aside from the crystal figurines, the only property to which any evidence was submitted regarding its value was Stephanie's 2004 Toyota 4-Runner, which Horace valued at $9,000.00 and Stephanie valued at $8,224.00. We note that the Kelly Blue Book value submitted into evidence was generated more than a year before trial in this matter, and Stephanie testified at trial that the vehicle was probably worth $6,000.00 at the time of trial. In her post-hearing brief, Stephanie argued that there was no documentary evidence to support Horace's valuation as to the community movables and that many of the items on Horace's list were not in her possession. She requested that the trial court "simply order that each party retain in their possession the movable items they currently have." Given this evidence, we find no abuse of discretion with regard to the trial court's disposition of the community movables.

*Sale of Hawaii Property and Associated Expenses*

Both parties also assign error as to the trial court's findings regarding the sale of the former community asset consisting of immovable property in Hawaii. Horace also assigns error to the trial court's failure to reimburse him for utilities for the Hawaii property "and other random expenses[.]"

Horace contends that the trial court erred in finding that the sale generated a profit and in failing to award him reimbursement for $8,992.06 he paid in separate funds towards the sale. Specifically, Horace argues that the trial court failed to

8

include the fees incurred during the sale, which totaled $30,970.43. Horace argues that the failure to include those fees in the calculations caused the trial court to erroneously determine that there was a profit in the amount of $30,000.00 on the sale of the Hawaii property. Additionally, Horace contends that he is entitled to reimbursement for one-half of $8,992.06 he paid with separate funds towards the seller's fees in that transaction.

With regard to the trial court's findings that there was a profit generated by the sale of the Hawaii property, we find that the trial court was manifestly erroneous in this conclusion. The settlement sheet from the sale was entered into evidence. It indicates that the sale price for the property was $555,000.00, but that, after all of the fees and costs were totaled, including an outstanding mortgage for $526,790.60, there was no profit. In fact, the seller owed $8,992.06. In support of this conclusion, we observe that Horace testified that the "closing costs" from the sale were close to $9,000.00. Nor was there other evidence indicating that there was a profit from the sale entered into the record. Accordingly, we amend the trial court's judgment to delete the $15,000.00 award to Stephanie stemming from the sale of the Hawaii property.

Further, we find a mathematical error in the trial court's award of reimbursement for expenses from the sale of the Hawaii property. Stephanie has asserted this issue as an assignment of error. The evidence reflects that Horace's expenses were $8,992.06. The trial court's written reasons indicate that the trial court awarded Horace $5,999.90 in reimbursement for one-half of the expenses incurred pursuant to the sale of the Hawaii property. One-half of $8,992.06 is $4,496.03, not $5,999.90.

9

However, it is unclear from the record whether the trial court also included various other expenses in that reimbursement amount. Horace requested reimbursement for utilities and "other random expenses" incurred in the management of the Hawaii property and the Texas property. In his First Amended Detailed Descriptive List and Traversal of Plaintiff's First Amended Detailed Descriptive List, Horace sought reimbursement for $281.08 in electric bills and $530.41 in water bills, as well as a "realtor fee" in the amount of $625.00 and "Colonial Real Ex-TX" fees in the amounts of $803.00, $504.25, and $264.00. The evidence submitted by Horace supports his assertion that he paid electric bills totaling $280.58 and water bills totaling $528.61 for the Hawaii property. Horace submitted evidence for electric and water bills from April 2013 until October 2013. The electric bills were in the amounts of $73.20, $44.95, $54.95, $80.24, and $27.24, and for water bills in the amounts of $94.96, $102.08, $102.08, $56.18, $81.07, and $92.24, for a total of $809.19.[1] Horace also submitted evidence concerning payment of maintenance and repair fees for the Hawaii property in the amount of $625.00. Accordingly, we conclude that Horace is entitled to reimbursement for one-half of those amounts, or $717.10. However, although Horace asserted that he was entitled to reimbursement for fees apparently associated with the Texas property, we see nothing in the record supporting his claim for those amounts and do not therefore further address this issue.

---

[1] In his detailed descriptive list, Horace asserted that two of the bills were for $102.98. However, the actual statements entered into evidence show amounts of $102.08.

Accordingly, we reduce Horace's reimbursement for expenses associated with the sale of the Hawaii property, utilities, and maintenance fees to $5,213.13.[2]

*Mortgage Payments*

Horace also seeks reimbursement for mortgage payments he made with separate funds after the termination of the community. The trial court denied that request, noting that there was an "$8,000.00 utility bill" incurred for the house, and finding that it could not reconcile that utility bill with a vacant house. Louisiana Civil Code Article 2365 provides, in relevant part, that "[i]f separate property of a spouse has been used either during the existence of the community property regime or thereafter to satisfy a community obligation, that spouse is entitled to reimbursement for one-half of the amount or value that the property had at the time it was used." The burden of proof is on the party claiming the reimbursement, and the appellate court reviews the trial court's findings regarding entitlement to reimbursement pursuant to the manifest error standard of review. *David*, 117 So.3d 148.

Here, Horace asserted that he paid $25,751.71 towards the mortgage for the Hawaii property with his separate property, and that he would therefore be entitled to $13,875.86. Stephanie argues that it is unclear from the record what Horace paid for the mortgage payments. Further, she argues that the parties had an agreement that Horace would pay the mortgage payments and she would receive rent from the Hawaii and Texas property in lieu of spousal support.

In support of his argument, Horace submitted into evidence bank statements that purport to show those payments to the mortgage company from March of 2013

_____

[2] An amount calculated by adding the amount due Horace for one-half of the expenses incurred pursuant to the sale of the Hawaii property to the amount due Horace for one-half of the utility, water, and maintenance fees ($4,496.03 + $717.10).

until September of 2013. The bank records show payments with notations such as "Bank of America mortgage payment" or "official check request," some with handwritten notations indicating that the payments were for the Hawaii mortgage. Horace testified that these payments were for the Hawaii mortgage. The only documentation from the mortgage company is a bill from Green Tree dated August 10, 2013, indicating a current amount due of $3,724.65, a past due amount of $3,724.65, and an escrow balance of $473.84 for a total of $7,923.14. Horace's bank statements from August and September of 2013 show payments in the amount of $2,500.00, $1,465.00, $2,500.00, and $1,470.00 for a total of $7,935.00.

The trial court's reasoning for denying the reimbursement request was that there was an "$8,000.00 utility bill" that it could not reconcile with the property being vacant. Our review of the record only reveals utility bills totaling $809.19. Despite this inaccurate statement, we find no manifest error in the trial court's refusal to allow Horace reimbursement for mortgage payments he allegedly made with separate property.

As the party seeking reimbursement, Horace bore the burden of proof of showing that he made payments towards a community obligation with separate property. There is evidence that Horace made certain payments in the record. However, Horace also testified that, after he began receiving the rental income, he used it towards the mortgage payments. Horace testified that there was a shortfall of about a thousand dollars, but the record is not clear whether any or all of Horace's claims for reimbursement would be offset by his receipt of the rental income.

Further, Stephanie argued that, in lieu of spousal support, the parties agreed that she would receive the rental payments and Horace would be responsible for

12

the mortgage. There is no testimony that such an agreement included Horace's responsibility for the mortgage payments, and Horace denied that such an agreement existed. Additionally, the record contains a motion filed by Stephanie alleging that, when the parties were determining child support, they agreed she would receive the rental payments to supplement her income. She alleged therein that Horace unilaterally directed the property management companies to stop forwarding the rental income to her. An interim order of the court reflects that the trial court directed the property management company to forward all sums collected to date to Stephanie "as was the previous arrangement between the parties." Thereafter, pursuant to a judgment dated October 25, 2012, the trial court ordered that Horace begin receiving the rental income and requiring him to pay the mortgage and reducing Stephanie's child support from $960.00 to $794.41.

Given this evidence, it would not be manifest error for the trial court to find either a) that evidence was insufficient to establish that the payments were for a community obligation and made with separate funds, or b) that the parties' agreement concerning spousal support and/or child support included Horace's responsibility for paying the mortgage. Accordingly, we find no error in the trial court's determination with regard to the mortgage reimbursement issue.

*Texas Property Taxes*

In her assignments of error, Stephanie asserts that the trial court erred in finding that Horace paid real estate taxes for the Texas property in the amount of $12,848.44. The trial court awarded Horace $6,424.22 in reimbursement for his payment of the Texas property taxes, but Stephanie argues that the proper amount should have been $4,421.07. Further, she contends that she should not be required

to reimburse Horace for the $975.95 in late fees and penalties incurred as a result of late payment of the taxes.

In his detailed descriptive list and post-hearing brief, Horace sought reimbursement for taxes and fees in the amount of $12,848.43. He testified that he paid the taxes for the Texas property on various dates and submitted documentation in the form of receipts for taxes paid in the following amounts: $2,324.86 for 2013; $1,296.09 for 2012; $1,300.00 for 2012; $354.85 for 2011; $2,500.00 for 2011 and 2010; $2,042.28 for 2011 and 2010, which includes an appraisal fee in the amount of $175.00.[3] Horace also submitted corresponding bank statements indicating payments in those amounts on the dates corresponding with the receipts. Horace also claimed reimbursement for the 2014 taxes in the amount of $2,397.35 and a separate $458.00 late fee, although our review of the record indicated no evidence corresponding with those claims.

The trial court awarded Horace reimbursement for the "one-half of the Texas home taxes" in the amount of $6,424.22. However, we find this is manifestly erroneous as the record only supports a finding that Horace paid taxes in the amount of $9,818.08,[4] which would result in a reimbursement due to Horace of $4,909.04. Accordingly, we reduce Horace's reimbursement award for the payment of taxes to $4,909.04.

Stephanie also asserts that she should not be required to reimburse Horace for the penalties and late fees generated by his failure to pay the taxes when due, and that Horace's reimbursement award should be further reduced by the total

---

[3] In his detailed descriptive list, Horace claimed he was entitled to reimbursement for both a $175.00 abstract fee and $2,042.28 for 2011/2010 taxes. However, the receipt he entered into evidence indicated that the amount paid for taxes was $1,867.28 together with the abstract fee of $175.00 for a total of $2,042.28.

[4] In her brief, Stephanie asserts that the proper reimbursement amount is $9,818.07.

amount of penalties and late fees incurred. She argues that he is due one-half of $8,842.13, or $4,421.07. Stephanie asserts that the amount of late fees incurred was $975.94, which equals the total fees for "P&I" indicated on the tax receipts for 2010, 2011, and 2012.[5] She argues that the tax notices were being sent to Horace, not her. Citing La.Code Civ. art. 2369.3, she contends that a prudent administrator would not have incurred late fees, penalties and interest. Horace contends that the late fees should be assessed against Stephanie, as she was the one responsible for administering the property.

Having reviewed the record, we conclude that the trial court did not manifestly err in allowing reimbursement of the penalties and interest incurred as a result of the late payment of the taxes. Louisiana Civil Code Article 2369.3 imposes a duty on a spouse "to preserve and to manage prudently former community property under his control, including a former community enterprise, in a manner consistent with the mode of use of that property immediately prior to termination of the community regime." Although only one of the parties was receiving the rent at a time, there is no evidence in the record suggesting that the Texas property was solely under the control of either spouse. Accordingly, we find no error in the trial court's grant of reimbursement to Horace for the penalties and interest.

*Rental Income*

Both parties also assign error as to the trial court's determination with regard to rental income generated by the Hawaii and Texas properties. Horace asserts that the trial court erred in failing to award him reimbursement for the rental income

---

[5] The receipts also indicate that "Att fees" were charged in the total amount of $615.93, although Stephanie does not assert that Horace should not receive reimbursement for these fees.

received by Stephanie from December 1, 2011, until July 23, 2012. Stephanie contends that, until July 23, 2012, she was receiving the rental payments in lieu of additional child support. Therefore, she argues, Horace is not entitled to any additional rental reimbursements.

Horace also contends that the trial court erred in awarding Stephanie reimbursement for rental income from the Texas property in the amount of $5,400.00. Stephanie argues that the trial court's award to her for rental income from the Texas immovable property should have been higher. She contends that she should have been awarded $13,300.00.

Community property encompasses the natural and civil fruits of community, including the rents generated by income-producing properties. *David*, 117 So.3d 148 (citing La.Civ.Code arts. 551 and 2338). With regard to denying Horace's request for reimbursement for rental income received by Stephanie, Stephanie argued that she was receiving the rental income for both the Hawaii property and the Texas property in lieu of additional child support and that there is sufficient evidence in the record to support a conclusion in that regard by the trial court. Stephanie was initially awarded $960.00 per month in child support. She subsequently filed a rule to show cause, alleging that, when determining child support, the parties had agreed that Stephanie would receive the rental income to supplement her income. She further alleged that Horace had unilaterally directed the property management companies to stop forwarding the rental income to her. An interim order of the court directed the property management company to forward all sums collected to date to Stephanie "as was the previous arrangement between the parties." The trial court subsequently ordered that Horace begin

receiving the rental income, that he was required to pay the mortgage, and that Stephanie's child support payments be reduced.

Given this evidence, we conclude that there is sufficient evidence for the trial court to conclude that, while Stephanie was receiving the rental income, Horace agreed to forego his one-half share of those amounts in lieu of making additional child support or spousal support payments. Accordingly, we find no error in the trial court's denial of Horace's request for reimbursement of the rents paid to Stephanie.

With regard to the parties' arguments concerning the reimbursement awarded to Stephanie subsequent to the trial court's order awarding the rental payments to Horace, we find that the trial court was not manifestly erroneous in either the award to Stephanie or in its amount. Stephanie previously filed a rule to show cause on the basis that Horace unilaterally ordered the property management companies to stop forwarding the rental income to her. After a hearing, Horace was awarded the rental income from that time forward and was ordered to continue paying the mortgage. However, with regard to this issue, there is nothing in the record indicating any suggestion of any agreement that Stephanie agreed to forego her right to reimbursement for the rental income.

Further, Stephanie argues that she was entitled to reimbursement in the amount of $13,300.00, not $5,400.00. Stephanie's calculations on appeal are based on twenty-eight months of rent at $950/month, totaling $26,600.00 in rental income. However, in her post-hearing brief to the trial court, Stephanie only sought reimbursement for "$900.00 per month . . . from October 1, 2013[,] to November 10, 2014[,] for a period of 13 months which is $10,800.00." We note that at trial, with regard to the amount of rent for the Texas property, Horace

17

testified that he "couldn't say it went over nine hundred" and that "it just got rented back out in February." Given this evidence, we do not find that the trial court was manifestly erroneous in awarding Stephanie reimbursement for one-half of the rental income generated after Horace began receiving it and in making that award in the amount that she requested in her post-hearing brief.

*Savings Bonds*

Horace also argues that the trial court erred in failing to reimburse him for one-half the value of savings bonds bought by Stephanie with community funds. There was testimony at trial that Stephanie had purchased twenty-four $200.00 savings bonds during the marriage, and Horace contends he is entitled to half that amount, including interest. Stephanie asserted that the bonds were intended for Xavier's education and had been used for that purpose.

Stephanie testified that she purchased twenty-four savings bonds, each in the amount of $200.00, during the marriage. According to her testimony, each savings bond had accumulated $30.00 or $32.00 in interest when they were redeemed. Stephanie testified that Horace also purchased savings bonds for Xavier and that the purchasing program required that they put their names on the bonds, but that they also put "the dependent's name on it as well."

"The donation of community property to a third person requires the concurrence of the spouses, but a spouse acting alone may make a usual or customary gift of a value commensurate with the economic position of the spouses at the time of the donation." La.Code Civ. art. 2349. Here, there is sufficient evidence in the record to support a determination that both spouses intended for the savings bonds to be gifts to Xavier, as well as sufficient information to indicate that the value was commensurate with the economic position of the parties. *See*

*McCorvey*, 922 So.2d 694. Accordingly, we find no error in the trial court's denial of Horace's request for reimbursement with regard to this issue.

*GI Bill*

Stephanie requested reimbursement for her GI Bill benefits, which she transferred to Xavier to pay for his college education. The gist of her argument is that her GI Bill benefits were separate property because they did not accrue until after the termination of the community but that Horace's benefits were community property because he accrued them during the existence of the community. Further, she asserts that the parties agreed that her GI Bill benefits would be transferred for Xavier's benefit and that Horace used his own GI Bill benefits for his own education. Stephanie requests that this court remand this matter for further evidence on this issue.

We find no error in the trial court's denial of these requests. We initially note that the evidence submitted by Stephanie is not sufficient to prove the value of either her GI Bill benefits or Horace's GI Bill benefits. Further, it is not clear from the record whether Horace's benefits were used during the existence of the community or after. With regard to her own GI Bill benefits, Stephanie testified that Xavier's tuition expenses were $16,800.79. Although she submitted a tuition statement from LSU for Xavier to support that claim, our review of that document indicates multiple tuition payments from various sources, and there was no testimony or other evidence to assist the court in determining which payments are those attributable to GI Bill benefits.

The burden of proof in establishing entitlement to reimbursement is on the party claiming reimbursement. *David*, 117 So.3d 148. Having reviewed the record, we conclude that there is insufficient evidence to establish that Stephanie is

entitled to reimbursement for the use of her GI Bill benefits for Xavier's education, and we therefore find no error in the trial court's denial of Stephanie's request for reimbursement for this item.

*Judgment*

The trial court's judgment in this matter, after stating the total amount of reimbursement owed to each party, ultimately ordered that:

> IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that STEPHANIE KEENAN is awarded the home located in Texas upon payment to HORACE KEENAN of $22,967 which is one half of the value of the house less the amount owed to her by HORACE KEENAN for reimbursement.

Stephanie assigns error to the trial court's requirement that she satisfy the equalizing payment obligation prior to transfer of the immovable property.

Louisiana Revised Statutes 9:2801(A)(4)(d), which provides for an equalizing payment in community property partitions, states:

> In the event that the allocation of assets and liabilities results in an unequal net distribution, the court shall order the payment of an equalizing sum of money, either cash or deferred, secured or unsecured, upon such terms and conditions as the court shall direct. The court may order the execution of notes, mortgages, or other documents as it deems necessary, or may impose a mortgage or lien on either community or separate property, movable or immovable, as security.

Thus, the trial court has wide discretion in crafting the terms and conditions associated with an equalizing payment. *Benoit v. Benoit*, 11-376 (La.App. 1 Cir. 3/8/12), 91 So.3d 1015, *writ denied*, 12-1265 (La. 9/28/12), 93 So.3d 838. However, as noted by Stephanie in her brief, conditioning the transition of the community property upon her payment of the equalizing payment unnecessarily lengthens the entanglement of these two parties and may subject Stephanie to further claims for a portion of the rental income. As stated by the fourth circuit in

*Stewart v. Stewart*, 585 So.2d 1250, 1253 (La.App. 4 Cir. 1991), *writs denied*, 590 So.2d 594, 597 (La.1992), "we believe the intent of [La.]R.S. 9:2801 is to require the trial court to make a final apportionment of the assets and liabilities." The fourth circuit also noted that, absent law or judicial act to the contrary, La.Civ. Code art. 807 prohibits anyone from being compelled to hold a thing in indivision with another. *Id.*

Accordingly, we find that it was an abuse of discretion for the trial court to condition the award of the Texas property to Stephanie upon her payment of the equalizing payment. We therefore delete that provision, and remand to the trial court for further proceedings concerning the equalizing payment and award of the Texas property.[6]

*Conclusion*

In sum, for the foregoing reasons, we conclude that the plaintiff, Stephanie Keenan, is owed reimbursement from the defendant, Horace Keenan, III in the amount of $23,456.75.[7] Horace Keenan, III is owed reimbursement by Stephanie

---

[6] We additionally note that when a judgment affects the title to immovable property, the judgment:

> shall describe the immovable property affected with particularity." La.Code Civ.P. art. 1919. *See also* La.Code Civ.P. art. 2089. The purpose of these articles is "to insure that the public in general, and title examiners, successful litigants, officials charged with executions of judgments and surveyors in particular, can accurately deal with the immovable property." *Hurst v. Ricard*, 558 So.2d 1269, 1272 (La.App. 1 Cir.), *writ denied*, 559 So.2d 1378 (La.1990). However, the failure to describe the property does not nullify the judgment rendered. *Fields v. Etheridge*, 487 So.2d 551 (La.App. 4 Cir.1986).

*Goal Properties, Inc. v. Prestridge*, 14-422, p. 4 (La.App. 3 Cir. 11/5/14), 150 So.3d 610, 613 (footnote omitted).

[7] An amount calculated by adding the reimbursements due Stephanie contained in the trial court's reasons for judgment, as amended: $11,456.75(USAA account) + $5000.00 (CD) + $1,600.00 (HSBC card) + $5,400.00 (rental for Texas house).

Keenan in the amount of $10,122.17.[8]  The trial court previously determined that the Texas immovable property was worth $98,000.00 and awarded that property to Stephanie.  Neither party disputes that value or the award.  Accordingly, after taking into account these amounts, Horace Keenan, III is now due an equalizing payment in the amount of $35,665.42.[9]  We also delete the requirement that the award of the Texas immovable property is conditioned upon Stephanie's payment of the equalizing payment to Horace Keenan, III and remand this matter to the trial court for further proceedings on that issue.

## DECREE

For the foregoing reasons, we amend the judgment of the trial court and affirm as amended with regard to the reimbursement claims of the parties.  We amend the judgment to indicate that the amount of reimbursement due to the plaintiff, Stephanie Keenan, from the defendant, Horace Keenan, III, is $23,456.75.  We also amend the judgment to indicate that the amount of reimbursement due Horace Keenan, III from Stephanie Keenan is $10,122.17.  Thus, after taking into account the award of the Texas immovable property to Stephanie Keenan and its value of $98,000.00, we amend the equalizing payment due to Horace Keenan, III from Stephanie Keenan to $35,665.42.  We reverse the condition imposed upon the transfer of the Texas property to Stephanie Keenan.

---

[8] An amount calculated by adding the remaining reimbursements due Horace contained in the trial court's reasons for judgment, as amended: $5,213.13 (sale, utility, and maintenance expenses) + $4,909.04 (Texas property taxes).

[9] An amount calculated as one-half the value of the home ($49,000.00) minus the total amount of reimbursement owed Stephanie ($23,456.75 – $10,122.17).

We remand for further proceedings.  Costs of this appeal are assessed equally to

Stephanie Keenan and Horace Keenan, III.

**AFFIRMED IN PART AND AFFIRMED AS AMENDED; REVERSED IN PART; AND REMANDED FOR FURTHER PROCEEDINGS.**